FRANK JONES v. THE STATE.

No. 11049.   Delivered January 4, 1928.
Rehearing granted June 23, 1928.
Rehearing denied State December 19, 1928.

174

The opinion states the case.

*Lem Wray* and *Tom Whipple* of Waxahachie, for appellant.

*A. D. Emerson,* County Attorney of Ellis County, *Henry Tire* of Dallas, and *John H. Sharp* of Ennis, special prosecutor, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, eight years in the penitentiary.

Mitchell, the deceased, and appellant were brothers-in-law. Attracted by a shot and screams, witness Meredith, a passer-by, ran to the house occupied by deceased and appellant and found deceased shot through the leg. Deceased at this time said to witness, "Frank Jones have shot me, he shot me in the leg. If I get up from here, I will get him. He shot me for nothing." This statement was admitted without objection. The time of its occurrence was about five or six o'clock in the afternoon and the next morning early another witness talked to deceased and appellant offered to prove by such witness that deceased at that time told him the shooting was an accident. This proferred statement occurred about twelve hours after the shooting, was clearly not a part of the main transaction, and was lacking in the elements which rendered it admissible as res gestae. It is insisted, however, that it was admissible as impeaching evidence of the statement of deceased made the night before, quoted above.

Such a statement would have been admissible to impeach a dying declaration of deceased. Hamblin v. State, 34 Tex. Crim. Rep. 368. Branch's P. C., Sec. 1868. There is no claim made, nor any basis

for such a claim, that the quoted statement of 'deceased was a dying declaration or that the offered testimony was such. The question presented is whether or not a res gestae statement can be impeached by proof of a contradictory statement made some twelve hours later to a third party and coming under none of the rules which made it admissible as original evidence. Appellant seems to insist that the question is governed by the same rules which apply to dying declarations.

There exists an obvious distinction between a dying declaration and a res gestae statement. In the one case a sense of impending death takes the place of an oath and the law regards the declarant as testifying, while in the other, it is the event itself which speaks. The one may therefore be impeached as the evidence of any witness may be, but the other is inanimate. It is the transaction speaking as distinguished from the witness. Res gestae is in law regarded as the actual facts expressing themselves through the mouth of a witness. Reasons underlying and which permit the admission of res gestae statements preclude the idea that they may be impeached by proof of contradictory statements of declarant made at a time and under circumstances which render them hearsay. The following quotations from the rules and principles governing the admission of res gestae statements will illustrate this:

"The general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to actual sensations and perceptions already produced by the external shock." Wigmore's Evidence, Sec. 1747.

"The utterance must have been made while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." Wigmore's Evidence, Sec. 1750 (b).

"The admissibility of res gestae statements is not dependent at all upon the veracity of the declarant because he is not regarded as a witness but as merely the passive instrument through which the event itself speaks." Encyclopaedia of Evidence, Vol. 11, p. 294.

"In some cases the res gestae principle is distinguished from the principle involved in the admission of dying declarations. In the latter the apprehension of immediate death takes the place of the oath, while in the former it is the spontaneity of the statement and the fact that it is the transaction itself speaking which renders the

declaration admissible. In one the declarant is regarded as a witness, the truth of whose declaration is guaranteed by the effect on the mind of declarant of the realization of approaching death. In the other declarant is not looked upon as a witness but merely as the instrument through which the transaction voices itself." Encyclopaedia of Evidence, Vol. 11, p. 296.

As further illustrating this rule, see Branch's P. C., p. 53. Kenney v. State, 79 S. W. 817.

In the admission of res gestae statements, the Courts have overridden almost all other rules of evidence and even the statute itself. It has been held that the res gestae statements of the wife against the husband are admissible. Cook v. State, 22 Tex. Crim. App. 511. The res gestae statements of one under arrest, though not warned, are admissible. Powers v. State, 23 Tex. Crim. App. 42. The res gestae statements of a convict incompetent to testify under the statute have been held admissible. Neely v. State, 56 S. W. 625. As further illustrating the rule under discussion, see Corpus Juris, Vol. 16, pp. 641, 577–578. Tomerlin v. State, 26 S. W. 66. Clements v. State, 294 S. W. 590.

An analysis of the cited authorities and those which support the text quoted above demonstrate, we think, conclusively that a declarant making a res gestae statement is not regarded as a witness and we think is therefore not subject to impeachment as in ordinary cases. The offered testimony being hearsay the Court's action in refusing to admit same was in our opinion correct.

It seems the Court in his charge made out a form of verdict in blank for the jury. The verdict was written out on the Court's charge in one of these blanks and returned into Court. No exception was taken to the reception of this verdict by the Court. Subsequently in motion for new trial complaint was made of the action of the Court in receiving this verdict written as it was into the charge of the Court by filling in the blanks. Under the recited circumstances no error is shown. Lee v. State, 181 S. W. 728.

In view of the Court's qualifications to appellant's remaining bills of exception, they manifest no error in our opinion, and will not be discussed.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The State and the accused relied each for support of their respective theories in this case upon res gestae statements of deceased. No eye-witness testified for either side. Meredith and Smith, both State witnesses, were near the scene of the shooting, heard the only shot fired and went to the place. They found in the house only deceased, who was shot one time, the bullet entering on the inner side of the leg above the knee, and being taken out below the knee. Meredith swore that deceased told him that appellant shot him for nothing. He also testified that deceased told him that if he got up from there he would get appellant. This latter statement was an expression of deceased relative to his own feeling and should not be admitted if this case is ever tried again. Smith swore for the State on rebuttal that deceased told him at said time that appellant shot him. He did not set out the statement that appellant shot him "for nothing." For the defense, Watkins, who lived across the street from where the shooting took place and who heard the shot and went over, swore that deceased told him that it was an accident. The city marshal of the town of Ennis got to the place a few minutes after the shooting and testified also that deceased told him it was an accident. Likewise the doctor who got there about ten minutes after the shooting, says deceased told him it was an accident. The occurrence was late in the afternoon or in the nighttime.

As an original proposition it may be seriously doubted, under the facts of this case, if such testimony furnished sufficient proof of a shooting upon malice. Appellant and deceased were brothers-in-law, lived in the same house, worked for the same railway company, are not shown to have ever had any difficulty or trouble of any kind, the record is free of threats, and, save and except the res gestae statement above referred to, presents no proof that deceased and appellant had ever had a cross word or disagreement. We are informed by the record that deceased walked into the room where appellant was and that they were about eight feet apart when the pistol was fired. The place of the wound and the direction taken by the bullet strongly support the inference that there was no effort to kill. One man shooting at another a distance of eight feet, if to kill, would likely aim at the head or body. Suppose deceased said to Meredith "He shot me for nothing," does this necessarily mean that the shooting was not an accident. A man accidentally shot, is shot for nothing. He receives a wound without desert or expecta-

tion. No cause is known or appears to the injured party for the shooting. Whether the statement attributed by Meredith to deceased "He shot me ,for nothing," is enough to support the legal theory of a malicious shooting, must depend upon the facts of the case. We have here the same declarant, in the next breath so to speak, saying that the shooting was an accident, i. e., not a malicious shooting. To another and another he repeats that it was an accident. The fact that he never repeated the statement that "He shot me for nothing," connected with the fact that always afterward he said it was an accident, would seem to indicate that by saying "He shot me for nothing," deceased meant nothing more than that he had given appellant no cause for shooting him. In such case each repetition by deceased of the statement that the shooting was an accident, should have weight as a declaration by him in contradiction of the State's interpretation put upon the words "He shot me for nothing," and if this expression be relied on as the only support of a theory of murder, i. e., a shooting upon malice, then this court finds itself in such condition of doubt as that we are unwilling to let this verdict stand. This is not a case of conflicting testimony, some for and some against,—in which case we say we will not disturb the verdict. It is a case in which a man is shot by his brother-in-law, and on the spur of the moment says "He shot me for nothing," but who said to a number of others in a few moments, "It was an accident." Admitting that the shooting would necessarily be for nothing if same was an accident, and that if it was an accident that appellant should be acquitted, we find ourselves confronted with the proposition that a citizen of this State, black and humble though he be, deprived of eight years of life and liberty, upon an unsupported interpretation of a statement which is explained, contradicted and overcome by other statements of deceased.

If the two res gestae statements, viz: the one offered by the State that "Frank shot me for nothing;" the other offered by the appellant that the shooting was an accident, be deemed entirely irreconcilable so that one being true the other must be held untrue,—then the proposition of self-contradiction, treated at length by Mr. Wigmore in Chap. 34, Vol. 2, of his work on Evidence, would be presented. This question is somewhat analogous to our well settled doctrine upon which supporting consistent statements are deemed of weight when the truth of any declaration in evidence is attacked by proof of other declarations and statements at variance therewith. The only apparent distinction between the question at issue in such case, and

that now before us, would be that in res gestae statements the veracity of the declarant is not a consideration, it being the established holding that such statements do but represent the facts speaking through the declarant, and are properly held to be not statements of the declarant about the facts.

There seems little question but that the argument set out in a bill of exceptions, as used by private prosecution, was in violation of the rule against referring to the failure of the accused to testify, but said bill is so qualified by the trial court as not to present reversible error.

Having such serious doubt of the sufficiency of the facts in this case to support beyond a reasonable doubt the theory of a killing upon malice, we are of opinion that the case should be reversed.

The motion for rehearing is granted, the judgment of affirmance set aside, and the case is now reversed and the cause remanded.

*Reversed and remanded.*

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In a very forceful and persuasive motion for rehearing and oral argument, State's counsel insists that the court was not authorized to reverse the judgment of conviction.

On the question of the sufficiency of the evidence to support the conviction of the appellant for murder, it is difficult to reach a conclusion. The announcement of this court seems misconstrued. The court did not decide that the deceased was shot by accident. No right to determine as a fact that the shooting was accidental is possessed by this court. The evidence is such as to leave the minds of the members of this court in doubt upon the subject. Such was the idea which the opinion on motion for rehearing was intended to express. As the record is read, a most potent circumstance against the accused is his failure to testify in his own behalf. While the statute declares that such fact shall not be considered against the accused, obedience to the statute in that particular is almost impossible, even for the members of this court. It is especially so with the members of the jury. In Art. 710, C. C. P., 1925, it is said:

"The failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."

That the argument of counsel for the State upon the trial of the case was so worded as to direct the minds of the jury to the failure of the accused to testify is made manifest by the bill of exceptions. The language used was subject to the interpretation mentioned and was doubtless so regarded by the jury. The language imputed to State's counsel is not in question. The bill sets it forth and its accuracy is vouched for by the certificate of the judge. As stated in the previous opinion, the objection made to the argument, as shown by the judge's qualification to the bill, was not deemed sufficiently specific to justify this court in reversing the case because of the argument alone. The making of the argument and its tenor and purport was rightfully made evident to this court by the bill of exceptions, and as stated above, the fact of the accused's silence alone, without comment or allusion, is one that both the untrained and trained mind finds it difficult to ignore. The evidence is meagre concerning the immediate incidents of the homicide, and very meagre touching any motive therefor. The shot may have been fired purposely and yet the offense be less than murder. On the whole case, there is such doubt entertained whether the evidence given by the witness was such as would overcome the presumption which the law prescribes favorable to the accused and establish beyond a reasonable doubt his guilt of the offense that we are constrained to resolve the doubt in favor of the accused to the end that he may have another trial. It is not to be implied that if another jury should find the appellant culpable that the verdict would be annulled on appeal.

Supplementing the announcement made in the original opinion relating to an attempted impeachment of a statement received as res gestae, by proof by hearsay, of a subsequent statement of the deceased, it is deemed expedient and proper to add the following remarks:

The term "res gestae" came into the law of this state by act of the Congress of Texas in 1836 and is now embodied in Art. 3713 of the Revised Civil Statutes of 1925 adopting the common law of England applicable to the rules of evidence. We learn from text-writers that limitations upon the application of the term of res gestae have never been satisfactorily prescribed. See Wigmore on Evidence, 2nd Ed., Vol. 2, Sec. 1767. At the time our statute upon the subject was adopted, the application of the term was far more restrictive than at present. See Greenleaf on Evidence, 13th Ed., Vol. 1, p. 129, Sec. 108.

In Wharton's Criminal Evidence, 3rd Ed., Vol. 1, p. 490, sec. 262, it is said:

"Res gestae are events speaking for themselves, through the instinctive words and acts of participants, but are not the words and acts of participants when narrating the events. What is said or done by participants under the immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks."

In the editor's notes in the volume last mentioned it is said:

"The Court of Criminal Appeals of Texas has so far departed from the definition in its admission of all facts, circumstances, statements, occurrences, before, accompanying, and after, that, as illustrating the rule, the cases would be of no value as to the limits set for *res gestae*. . . . The Texas Court of Criminal Appeals always considers the entire record, weighing, analyzing, and thoroughly digesting all the evidence before applying the law to the case in hand, and hence admissions as *res gestae* in the Texas court are not so harmful an application of the rules of evidence as in courts less painstaking with examination of records, and who dwell more upon the strict rules of law."

Due to our radical departure from the former application of the rule, there might be presented a case where an alleged res gestae statement was so remotely connected with the main transaction and so immediately connected with the statement offered to impeach it as to make the latter admissible. The law pertaining to this question is so unsettled and so unsatisfactory that we feel unable and unwilling to state a rigid rule. Cases differ so widely in their facts, and in their interpretation that precedents on the subject are of little value. As the facts of each case must determine the admissibility of res gestae statements, so must they determine the admissibility of testimony to impeach same. It is thought that the original opinion states the correct general rule, especially as it anciently existed, and properly applies it to the present facts. Under the modern trend of authorities, however, there may be presented a state of facts to which it could not be safely applied.

The motion for rehearing by the state is overruled.

*Overruled.*