959 P.2d 810

**STATE of Arizona, Appellee,**

v.

**Armando Michael HERNANDEZ, Appellant.**

**No. 1 CA–CR 97–0484.**

Court of Appeals of Arizona, Division 1, Department B.

May 26, 1998.

---

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Diane M. Ramsey, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Louise Stark, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

GERBER, Judge.

¶1 Armando Michael Hernandez ("Defendant") appeals from his conviction and sentence on one count of murder in the second degree under Arizona Revised Statutes Annotated ("A.R.S.") section 13–1104. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 Defendant and the victim, Perry Cota, had an ongoing, sometimes violent dispute. When the two confronted each other on the night of January 22, 1994, Defendant fatally shot Cota with a handgun. Several people witnessed the event. Defendant left the scene and called 9–1–1 approximately 20 minutes after the shooting to report the incident. Defendant told the 9–1–1 operator that Cota attacked him with two broken bottles and that he shot Cota in self defense. Police arrested Defendant later that evening.

¶3 A Maricopa County grand jury indicted Defendant on one charge of first degree murder. The case proceeded to a jury trial where Defendant sought acquittal on a self-defense theory. The State's witnesses testified to a version of events that did not support self defense. The jury convicted Defendant of second degree murder. The trial court sentenced him to a presumptive 16–year prison term.

¶4 Defendant timely appealed. This court has jurisdiction to adjudicate the appeal. Ariz. Const. art. VI, § 9; A.R.S. §§ 12–120.21(A)(1) (1992), 13–4031 (1989), 13–4033(A)(1) (Supp.1997).

## ANALYSIS

1. *The trial court was within its discretion in admitting Defendant's prior felony convictions to impeach his statements on the 9–1–1 tape.*

¶5 Anticipating that Defendant might testify at trial, the State moved under

Rule 609 of the Arizona Rules of Evidence ("Rules") to admit Defendant's prior felony convictions for purposes of impeaching his testimony. After a hearing, the court ruled the prior convictions admissible for impeachment if they were "sanitized" as to the nature of the felonies and subject to an appropriate limiting instruction.

¶ 6 Defendant moved *in limine* to admit a tape recording of the 9–1–1 call he made from his parents' home approximately 20 minutes after the murder (the "9–1–1 tape"), arguing alternatively that it was not hearsay,[1] and that it fell within the excited utterance exception to the hearsay rule.[2] The State noticed its intention to use the prior convictions for impeachment of Defendant's statements on the tape regardless whether he testified, relying on Rule 806.[3] Defendant objected to use of the prior convictions to impeach his 9–1–1 tape statements, and the parties briefed and argued the issue. Defendant contended that the prior convictions should not be used. First he argued that Rule 806 applied only to hearsay statements, and the 9–1–1 tape was not hearsay because it was being introduced to rebut premeditation by showing that he reported the incident to authorities, an act presumably inconsistent with premeditation. Secondly, he argued that the prior convictions were "not probative at all" because he was not convicted until after the date of the shooting.[4]

¶ 7 Defendant did not testify, but he did introduce the 9–1–1 tape. Over defense ob-

jection, and after briefing[5] and argument on the applicability of Rule 806, the trial court permitted the State to impeach Defendant's statements on the 9–1–1 tape with his prior convictions. He argues that prior convictions may only be used to impeach testifying witnesses, that it is illogical to impeach excited utterances with prior convictions, and that the use of prior convictions against a criminal defendant is distinct from and more unfairly prejudicial than use of prior convictions to impeach other categories of witnesses. We disagree with each of these contentions.

¶ 8 We note at the outset that Rule 806 applies because, as Defendant implicitly concedes on appeal, his statements on the 9–1–1 tape were hearsay, i.e. statements offered to prove the truth of the matter asserted. Ariz. R. Evid. 801(c). We have only to refer to Defendant's opening statement and closing argument to establish this point beyond doubt:

> (referring to anticipated testimony from a defense expert) [H]e will tell you that in his opinion, the very same thing that you will be able to hear from Mr. Hernandez, not now, but then, on that 911 tape moments after this happened is what happened.
>
> \*    \*    \*    \*    \*    \*
>
> (referring to the 9–1–1 tape) And you heard him. You heard him talking to the police, turning himself in.

---

1. On appeal, Defendant presumes his statements on the 9–1–1 tape were admissible under the excited utterance exception to the hearsay rule, and that appears to have been the trial court's rationale in admitting the 9–1–1 tape. Because the state did not raise the admission of the excited utterance as a cross-issue on appeal, we do not consider whether the trial court abused its discretion in admitting the 9–1–1 call.

2. Ariz. R. Evid. 803(2).

3. Rule 806 states:

   When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement

or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

4. Defendant shot Perry Cota on January 22, 1994. Defendant was convicted of second degree burglary and aggravated assault on May 9, 1996.

5. Defense counsel filed the same written motion *in limine* on three different dates. The record does not reflect any rationale for filing the same motion papers three separate times. We strongly disapprove of this wasteful and annoying practice.

This guy came at me with two beer bottles. I didn't know what to do. I didn't want to. I didn't know what to do.

Defense counsel also argued that his expert's conclusions matched the version of events Defendant related to the 9–1–1 operator.

### a. Impeachment of Excited Utterances

¶ 9 Rule 806 clearly contemplates use of impeachment evidence to discredit hearsay statements by non-testifying declarants:

When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked ... by any evidence which would be admissible for [that] purpose[ ] *if declarant had testified as a witness.*

[Emphasis added.] Rule 806 "specifically permits impeachment of a hearsay statement made by an absent declarant by any means which would have been permissible had the declarant been present and testified." *State v. Valencia,* 186 Ariz. 493, 501, 924 P.2d 497, 505 (App.1996).

¶ 10 Defendant argues that the impeachment evidence is irrelevant because it "can only be used to weigh the credibility of a witness whose demeanor and words the jury has viewed." This notion, too, conflicts with the very existence of Rule 806, which we interpret to specifically permit impeachment of hearsay statements by absent declarants. *See Valencia,* 186 Ariz. at 501, 924 P.2d at 505. Even before the Arizona Supreme Court promulgated the current Rules in 1977, our courts permitted the use of prior felony convictions to impeach a non-testifying declarant's hearsay statements. *State v.*

*Owen,* 101 Ariz. 156, 158, 416 P.2d 589, 591 (1966).

¶ 11 We see nothing illogical in concluding that excited utterances may be impeached. Although excited utterances are admissible because they are inherently trustworthy, that badge of trustworthiness does not render them unimpeachable. The jury determines the credibility of all testimonial statements offered to prove the truth of their content, including excited utterances. *See State v. Bowie,* 119 Ariz. 336, 342, 580 P.2d 1190, 1196 (1978). Advising the jurors of the declarant's prior felony convictions aids them in assessing the trustworthiness of the declarant's statement.[6]

¶ 12 The dissent contends that because an excited utterance is only admissible on the theory that it is likely to be free of conscious fabrication, it is illogical to allow the declarant to be impeached with a felony conviction because a felony conviction evidences the declarant's willingness to consciously disregard the truth. The flaw in the dissent's argument is that felony convictions are always admissible on the issue of credibility if they meet the requirements of Rule 609, but such convictions do not always implicate a willingness to consciously disregard the truth. *See Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967) cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287. Acts of violence that result from short temper, a combative nature, or extreme provocation, have no direct bearing on honesty and veracity. *Id.* Under the dissent's logic, only convictions that rest on conduct that is a conscious, reflective act implicating the witness's honesty should be admitted to impeach

---

6. We acknowledge a split of authority in other jurisdictions as to whether excited utterances are impeachable generally or specifically by the declarant's prior felony convictions. *See People v. Johnson,* 271 Ill.App.3d 962, 208 Ill.Dec. 730, 650 N.E.2d 1, 2 (1995) ("We do not consider a declarant of an excited utterance to be a witness capable of impeachment by a prior conviction."); *Carlson v. State,* 695 S.W.2d 695, 699 (Tex.App. 1985) (*"Res gestae* declarations are not ordinarily subject to impeachment, since the law does not regard the *res gestae* declarant as the witness, but 'as merely the passive instrument through which the event itself speaks' "), quoting *Jones v. State,* 111 Tex.Crim. 172, 11 S.W.2d 798, 799 (1928); *State v. Henderson,* 362 So.2d 1358, 1363 (La.

1978) ("Impeachment of an excited utterance by conviction of a crime is certainly feasible and should be allowed"). The State cites numerous federal cases upholding the admission of prior convictions to impeach a non-testifying defendant who offers his own exculpatory, admissible hearsay statements, but none of these cases involves impeachment of an excited utterance. Accordingly, they are not useful in addressing the proposition, expressed in *Johnson, Carlson* and other cases, that the declarant of an excited utterance is "merely the passive instrument through which the event itself speaks." *Carlson,* 695 S.W.2d at 699; *Johnson,* 208 Ill.Dec. 730, 650 N.E.2d at 2.

credibility of a witness. But, Rule 609 expressly provides to the contrary, and our courts have always allowed impeachment with any felony, regardless whether it directly involves an act that involves dishonesty or false statement. *See State v. Malloy,* 131 Ariz. 125, 127, 639 P.2d 315, 317 (1981) (because the perpetrator of a criminal act has demonstrated such a lack of scruples as to show a willingness to give false testimony, all felonies have some probative value in determining credibility).

¶ 13 Had the framers of the rules intended to limit impeachment for felony convictions or impeachment of an excited utterance, they would have done so. Instead, they expressly provided that felony convictions that do not relate to dishonesty or false statement are admissible to impeach credibility and that the credibility of the declarant of an out-of-court statement can be attacked by evidence "which would be admissible for those purposes if declarant had testified as a witness." See Rules 609 and 806. If defendant had testified as a witness, his testimony could have been impeached with his felony convictions regardless whether the underlying crimes involved his conscious fabrication. To accept the dissent's argument would require us to give defendant's out-of-court excited utterance more beneficial treatment than if defendant had related the same statement in open court while subject to cross examination.

¶ 14 The dissent answers that we have missed the point. The dissent again asserts that we should give the declarant of an out-of-court excited utterance more beneficial treatment because an excited utterance is, in effect, involuntary, while court testimony is deliberative. Aside from the fact that Rule 806 draws no such distinction, we think this argument overlooks an important consideration. Properly stated, the theory behind excited utterances is that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious

fabrication." Morris K. Udall et al., *Law of Evidence,* § 127, at 269 (3rd. ed.1991).

¶ 15 Arizona law does not require that, as a condition to admissibility, the court find that the declarant's statement was actually produced without reason or reflection. The statement may be admitted if, under all the circumstances of the declaration, the speaker may be considered as speaking under the stress of nervous excitement. *Keefe v. State,* 50 Ariz. 293, 298–299, 72 P.2d 425, 427 (1937). A jury may still find that the declarant of an excited utterance admitted under Rule 803(2) was not so influenced by the stress of excitement as to be incapable of fabricating the facts or acting in his or her own self interests. For this reason, Rule 806 permits the admission of a felony conviction to test the credibility of the declarant of an excited utterance.[7]

### b. Impeachment of a Non-testifying Defendant

¶ 16 Defendant also argues that use of the prior convictions was uniquely prejudicial because the defendant was the declarant, thus exacerbating the error in admitting the prior convictions. We disagree.

¶ 17 Use of the prior convictions to impeach the 9–1–1 tape was not error in the first instance. Testifying defendants are subject to impeachment with prior felonies under Rule 609. In adjudicating the State's Rule 609 motion, the trial court found that the probative value of the prior felonies outweighed their prejudicial effect. The trial court also issued an appropriate limiting instruction. We see no unfair prejudice under these circumstances.

2. *The trial court did not commit fundamental error by failing to reweigh the probative impeachment value of Defendant's prior felony convictions when it became apparent that Defendant would not testify.*

¶ 18 Rule 609(a) permits the introduction of prior felony convictions for pur-

---

7. For example, suppose the declarant is the intoxicated driver of an automobile involved in a serious collision. Seconds after the impact, the intoxicated driver gets out of the vehicle and says "I was not driving, it was the passenger." If this statement is admitted in the driver's DUI prosecution as an excited utterance, few would argue that the driver's prior felony convictions are not relevant to judge the credibility of the driver's statement.

poses of impeaching a testifying witness, subject to a finding that the probative value of admitting the prior convictions outweighs the prejudicial effect. The State sought a ruling on this issue prior to trial, anticipating that Defendant might testify in his own defense. The trial court found the prior convictions to be admissible under the rule, expressly concluding that the probative value outweighed the prejudicial effect.

¶ 19 Defendant did not testify. However, he introduced his hearsay statements on the 9–1–1 tape into evidence, and the State impeached those statements with the prior felony convictions. *See* discussion *supra.*

¶ 20 Defendant contends for the first time on appeal that the trial court erred by failing to reweigh the probative value of the prior convictions in impeaching the hearsay statement. He maintains "there is every likelihood" that the trial court would have reversed itself on this question had it performed a second balancing test. This conclusion rests on the following unrelated and largely undeveloped points:

Defendant's statements on the 9–1–1 tape were inherently reliable;

the felony convictions and the underlying acts did not exist at the time of the murder;

the jury was likely to disregard the limiting instruction;

Defendant's decision not to testify caused the jury to place undue emphasis on the prior felony convictions, a point manifested in the contents of a jury note.[8]

¶ 21 The State contends that it was unnecessary to reweigh the probative value against the prejudicial effect. Because the reweighing issue is raised for the first time on appeal, we review the trial court's actions on this matter only for fundamental error. Error is fundamental when it reaches the foundation of the case or takes from the defendant a right essential to his defense, or is an error of such dimensions that it cannot be said that it is possible for a defendant to have

had a fair trial. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

¶ 22 Defendant did raise one of the sub-issues below: whether the State could impeach Defendant with felony convictions imposed *after* the date of the Cota murder. The trial court correctly concluded that convictions based upon crimes occurring after the crime at issue are admissible for impeachment purposes under Rule 609. *See State v. Gretzler,* 126 Ariz. 60, 85, 612 P.2d 1023, 1048 (1980). The trial court's statement that use of the other convictions was "imminently (sic) unfair," but that he was bound by precedent, goes only to this narrow point and not to the broader proposition that it was appropriate to reweigh the probative value and prejudice of the felony convictions. Defendant is generalizing the trial court's comment to encompass the broader proposition. We agree with the trial court's conclusion: Arizona case law clearly holds that felony convictions imposed after the commission date of the crime at issue are admissible for impeachment. *Gretzler,* 126 Ariz. at 85, 612 P.2d at 1048; *Segovia v. Indus. Comm'n,* 119 Ariz. 231, 233, 580 P.2d 369, 371 (App. 1978); *Owen,* 101 Ariz. at 158, 416 P.2d at 591.

¶ 23 Defendant's remaining contentions are unconvincing. The inherent reliability of the excited utterance and the danger that the jury would disregard the limiting instruction are considerations that applied with equal force to prospective impeachment of either in-court testimony or out-of-court statements. Accordingly, we fail to see how reweighing these factors would have altered the trial court's initial decision.

¶ 24 The single remaining contention—that Defendant's decision not to testify increased the prejudice arising out of the prior convictions—is purely speculative. It is equally logical to suggest that the prior convictions take on more importance when the defendant chooses to testify, a point implicit in the argument Defendant made regarding the first issue:

8. The note read, "Could we again hear the dates of the prior conviction that was stipulated? May

6 of what year?"

The Arizona authorities cited by the State clearly envision that only a witness who faces a jury and tells a story in the courtroom will have his credibility challenged by the fact that he is a felon. . . .

He neglects to say *why* the prior convictions take on more importance when offered to impeach a hearsay statement by a non-testifying declarant. We decline to fill in the blanks.

¶ 25 The jury note shows only that the jury discussed the prior convictions; it says nothing about the weight they attached to the convictions or even whether the convictions affected their view of the 9–1–1 tape.

¶ 26 It was unnecessary to reweigh the probative value of Defendant's felony convictions, and there is no sound reason to conclude that reweighing would have altered the trial court's decision based on the record. There was no error.

3. *The trial court properly admitted evidence that Defendant had two felony convictions.*

¶ 27 On May 9, 1996, the Maricopa County Superior Court adjudged Defendant guilty of two felonies, second degree burglary and aggravated assault. The convictions apparently arose from acts committed on the same occasion against the same victim, defendant's then girlfriend. Defendant asserts that the trial court erred by failing to treat both convictions as a single conviction "for purposes of impeaching credibility and suggesting defendant's bad character." We disagree.

¶ 28 Defendant's failure to raise this issue below waived review for all but fundamental error. Defendant concedes the existence of two felony convictions. He offers no authority for the proposition that felony convictions arising from crimes committed on the same occasion must or should be treated as a single conviction when offered for impeachment purposes.

¶ 29 The State speculates that Defendant is confusing admissibility under Rule 609 with enhancement under A.R.S. section 13–604(M). A.R.S. section 13–604(M) requires that convictions for two or more offenses committed on the same occasion be counted as a single conviction for purposes of sentence enhancement. The statute is limited to sentencing and has no bearing on the use of felony convictions for impeachment purposes.

¶ 30 Defendant offers no policy reason for treating multiple convictions as a single conviction in the context of Rule 609. He simply concludes that the trial court's admission of two felony convictions offended due process and the United States Constitution. However, he cites no supporting case law, and we are not aware of any. Defendant relies on *Malloy* for the proposition that all felony convictions bear on witness credibility because the willingness to commit a "major criminal act" demonstrates "such a lack of scruples as to show a willingness to give false testimony." 131 Ariz. at 127, 639 P.2d at 317. We fail to see how that principle supports the conclusion that impeaching a witness with two felony convictions based on two crimes committed on the same occasion deprives a defendant of due process.

¶ 31 We further note that the trial court sanitized the nature of the convictions in an effort to minimize the danger of unfair prejudice. If Defendant felt that it would have been to his advantage to divulge further details on the nature and/or commission dates, he should have advised the trial court.

¶ 32 Defendant's argument is conclusory. He offers no reasoning to support the notion that trial courts must treat multiple convictions as a single conviction under Rule 609 whenever the convictions arise from acts committed on one occasion. No such reasoning is readily apparent to us. Again, we decline to fill in the blanks.

4 . *There was no fundamental error in the jury instructions or forms of verdict.*

¶ 33 The trial court gave the jury three forms of verdict: guilty of first degree murder, guilty of second degree murder, and not guilty. Defendant did not object to the verdict forms, as he was required to do under Rule 21.3(c) of the Arizona Rules of Criminal Procedure to preserve his claim of error. Nevertheless, he now asserts the verdict forms gave rise to fundamental error

because they "did not allow the jury to acquit of first degree murder, leaving this question unsettled in the event of a new trial."

¶ 34 The problem is illusory, as there will be no new trial. In any event, a finding of guilt on the lesser-included offense implies an acquittal on the greater offense, and double jeopardy considerations bar Defendant's retrial for first degree murder. *See Green v. United States*, 355 U.S. 184, 190–91, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *United States v. Paul*, 37 F.3d 496, 501 (9th Cir.1994); *State v. Maloney*, 105 Ariz. 348, 356–57, 464 P.2d 793, 801–02 (1970). Accordingly, there was no prejudice in failing to provide separate "not guilty" forms of verdict for first and second degree murder.

¶ 35 Defendant also contends that the lack of separate "not guilty" verdict forms for each offense may have confused the jury and implied that they could not acquit Defendant of either offense "unless they were certain the evidence showed that 'real possibility' that (Defendant) lacked guilt completely." We do not understand how the second proposition follows from the first.

¶ 36 The Arizona Rules of Criminal Procedure do not require separate "not guilty" forms for each offense. Rule 23.3 states, in relevant part, that "[f]orms of verdicts shall be submitted to the jury for all *offenses necessarily included in the offense charged....*" (Emphasis added.)

¶ 37 In *State v. Intogna*, 103 Ariz. 455, 457, 445 P.2d 431, 433 (1968), the Arizona Supreme Court stated that "[t]he proper procedure is to submit a separate verdict of 'guilty' as to each included offense, and only one verdict of 'not guilty' since the latter applies to all included offenses." Later, in *State v. Dippre*, 121 Ariz. 596, 599, 592 P.2d 1252, 1255 (1979), the Supreme Court found that the submission of four verdict forms, two for "guilty" and two for "not guilty," is "clearly permissible" under rule 23.3, but not mandatory. The court also stated that having separate "not guilty" forms "has the advantage of insuring that the jury will consider and reach a conclusion as to each offense separately." *Id.*

¶ 38 Fundamental error occurs where neither the jury instructions nor the forms of verdict give the jury the choice of finding the defendant "not guilty" on the charged offense and all of the lesser included offenses. *State v. Knorr*, 186 Ariz. 300, 303, 921 P.2d 703, 706 (App.1996). The verdict forms "must show every choice of verdict that the jury could return." *Id.* There were three choices of verdict in this case. The trial court issued a form for each choice. This case comports with the holding in *Knorr*. The vice in *Knorr* was the fact that the only "not guilty" form stated that the defendant was not guilty *of manslaughter,* the greater offense. This case does not suffer from that defect: the "not guilty" form was generic.

¶ 39 There were a limited number of scenarios in this case:

| 1st Degree Murder | 2nd Degree Murder | Result/Form of Verdict |
| --- | --- | --- |
| Acquit | Acquit | Not guilty |
| Convict | — | Guilty of 1st degree murder |
| Acquit | Convict | Guilty of 2nd degree murder |
| deadlock | Convict | Guilty of 2nd degree murder |
| deadlock | deadlock | Mistrial (no form signed) |

The instructions and verdict forms were adequate to deal with any of the foregoing contingencies. We see nothing in the instructions or the verdict forms that could have led the jury to conclude under those circumstances that they had to "find him (Defendant) guilty of something," and that contention flies in the face of the trial court's instructions on the presumption of innocence, the burden of proof, and the reasonable doubt standard. There was no error in the instructions or forms of verdict.

## CONCLUSION

¶ 40 For the foregoing reasons, we affirm Defendant's convictions and sentences. We

have not reviewed the record for fundamental error. *State v. Smith,* 184 Ariz. 456, 910 P.2d 1 (1996).

TOCI, C.J., concurs.

SULT, Judge, dissenting.

¶ 41   I respectfully dissent from that portion of the majority's decision which permits impeachment of an excited utterance by the showing of a prior felony conviction. Because I believe that such impeachment is illogical and therefore unjustifiable, and because I cannot conclude beyond a reasonable doubt that such impeachment here did not affect the verdict, I would reverse and remand for a new trial.

¶ 42   The inherent contradiction in the majority's position is illustrated by setting forth the evidentiary theories involved. Our supreme court has observed that a conviction for any felony, even one without an intrinsic component of dishonesty, is admissible to impeach the credibility of a testifying witness:

> upon the theory that a major crime entails such an injury to and disregard of the rights of other persons that it can reasonably be expected the witness will be untruthful if it is to his advantage. The perpetrator of a major criminal act has demonstrated such a lack of scruples as to show a willingness to give false testimony.

*State v. Malloy,* 131 Ariz. 125, 127, 639 P.2d 315, 317 (1981).

¶ 43   Our supreme court has also explained the nature of the excited utterance which justifies its admissibility in evidence as an exception to the hearsay rule:

> The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection ... the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.

*Keefe v. State,* 50 Ariz. 293, 297–98, 72 P.2d 425, 427 (1937).

¶ 44   As I understand these theories, the rule permitting impeachment with a prior felony conviction essentially assesses human nature and concludes that a convicted felon is more likely to deliberately lie when given the chance than someone who has not demonstrated such disregard of society's rules. The rule clearly contemplates that the testimony by the felon may be the product of a reflective mind making a conscious decision to fabricate.

¶ 45   The essence of an excited utterance, on the other hand, is that it is the product of a "spontaneous" mental process, a statement made "under the immediate and uncontrolled domination of the senses." *Keefe,* 50 Ariz. at 297–98, 72 P.2d at 427. As Wigmore has commented, an excited utterance is particularly trustworthy because it is made "during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection." John H. Wigmore, *Wigmore on Evidence* § 1747 at 195 (Chadbourn rev.1976). Because it is not the product of reasoned reflection engaged in to promote one's self-interest, an excited utterance by definition precludes the danger of conscious fabrication.

¶ 46   The obvious conclusion should be that an utterance that does not result from reason and reflection is simply not logically impeachable by evidence that is limited in its usefulness to an assessment of the reflective, conscious mind. However, the majority refuses to see this distinction. Rather, it extends a reasonable hypothesis regarding the conscious, reflective mind of a convicted felon into the realm of the unconscious where the relevance of felony conviction impeachment is nonexistent.[9]

---

9.  The majority asserts that I propose that only felony convictions that involve dishonesty or false statements should be admitted to impeach credibility. Op. at 557, 959 P.2d at 814. I make no

¶ 47 In its defense, the majority asserts that excited utterances are not unimpeachable and reasons from this that felony convictions are admissible to aid the jury in assessing the trustworthiness of such an utterance. *State v. Hernandez,* at 557, 959 P.2d at 814 (App.1998). I do not gainsay that an excited utterance may be impeached. What I assert is that such impeachment should be logical. For example, if the circumstances show that the utterer lacked the opportunity to accurately observe the startling event, or that the utterer suffers from impaired sight or impaired hearing, these circumstances should be admitted as impeachment. This is so because these factors logically bear on the utterer's credibility, as they are implicated even when it is the unconscious mind at work. Felony convictions, however, do not have the same logical relevance.

¶ 48 The majority also asserts that precluding felony conviction impeachment of an excited utterance "would require us to give defendant's out-of-court excited utterance more beneficial treatment than if defendant had related the same statement in open court while subject to cross examination." Op. at 558, 959 P.2d at 815. This observation illustrates that the majority misses the point. Testifying in open court is precisely the kind of reflective act that implicates the witness's character for consciously telling the truth at the time he is testifying. And a felony conviction is the kind of evidence which informs the jury of a character flaw which is relevant to their assessment of the witness's present willingness to consciously fabricate.

¶ 49 Conversely, an excited utterance is divorced from the witness's character for truthtelling because it is divorced from the witness's conscious mental processes. Therefore, a felony conviction does not tell the jury anything relevant about the credibility of the utterance but serves only to tell the jury that the utterer is a person of questionable character. I had thought that our rules of evidence expressly excluded such evidence. *See* Rule 404(b), Ariz. R. Evid.

¶ 50 What the majority has accomplished is to confuse two entirely different kinds of such proposal, as is evident from my incorpo-

statements and apply to them a "one-size-fits-all" rule. Precluding felony conviction impeachment of an excited utterance would not be giving such a statement "beneficial" treatment over courtroom testimony. It would instead be a recognition of the true nature of the excited utterance and would emphasize that when logic conflicts with the letter of the law, the law will be read to comport with logic.

¶ 51 The majority's decision, however, does not stop here. Exacerbating the illogic of their position is the fact that defendant did not suffer his felony convictions until more than two years *after* he made the utterance at issue. Thus, according to the majority, a felony conviction infects the felon to such a degree that not only are his unconscious thought processes rendered suspect, but the virus is so pernicious it can also operate retroactively to afflict his unconscious mind two years before he became a felon.

¶ 52 The majority also seeks to justify its decision in a manner which gives me concern. The majority seizes on the term "may" from the *Keefe* definition and suggests that felony convictions are necessary impeachment material so that the jury can find that the excited utterance "was not so influenced by the stress of excitement as to be incapable of fabricating the facts or acting in his or her own self-interests." Op. at 558, 959 P.2d at 815. Is the majority saying that the jury is now to decide what constitutes an excited utterance?

¶ 53 I do not read *Keefe* as creating a jury question regarding excited utterances. Rather, in saying that a speaker "may be considered" as speaking from stress, all *Keefe* means is that there is a determination that must be made whether an utterance qualifies as excited. This determination is clearly a preliminary question of admissibility under Rule 104(a), Arizona Rules of Evidence, a question which heretofore has been within the province of the trial court. *See State v. White,* 168 Ariz. 500, 505, 815 P.2d 869, 874 (1991) ("Jurors do not rule on admissibility—that is the sole province of the trial court."), *abrogated on other grounds, State v.*

ration of the *Malloy* principle into my analysis.

**564**

*Salazar,* 173 Ariz. 399, 844 P.2d 566 (1992); *State v. Thompson,* 169 Ariz. 471, 473, 820 P.2d 335, 337 (App.1991) (" 'The crucial point is that the [trial] court must be able to find that the declarant's state [of mind] at the time he made the declaration ruled out the possibility of conscious reflection.' ") (quoting 4 Weinstein's Evidence ¶ 803(2)[01] at 803–91 (1990)); *State v. Valencia,* 186 Ariz. 493, 500, 924 P.2d 497, 504 (App.1996) ("[rule 104(a)] requires the trial court to make ... factual findings in determining as a preliminary matter the admissibility of evidence. Such findings are not made known to the jury and do not usurp the jury's function."). If the trial judge admits the utterance as excited, the jury will assess the credibility of the utterance based on the circumstances surrounding it, as well as any logically connected impeachment material. However, the jury is not permitted to overrule the judge and find that the utterance did not qualify as excited.

¶ 54 The majority cites as justification for its position Rule 806, Arizona Rules of Evidence, which provides that any hearsay statement admitted in evidence may be impeached "by any evidence which would be admissible for [impeachment] if declarant had testified as a witness." Of course, impeachment with a prior felony is admissible against a testifying witness. Rule 609, Ariz. R. Evid. Read literally, then, Rule 806 supports the majority's holding, however illogical or unsupported by empirical evidence that holding is.

¶ 55 The answer is that we should not apply the literal language of the rule. Courts have not hesitated in the past to decline a literal application of statutory language when the result was an absurdity or a meaning clearly at variance with legislative intent. *Keller v. State,* 46 Ariz. 106, 115–18, 47 P.2d 442, 446–47 (1935); *State v. Baca,* 187 Ariz. 61, 66, 926 P.2d 528, 533 (App.1996). In such a case, we will alter, modify or supply words to give effect to the intent of the legislature. *Keller,* 46 Ariz. at 117, 47 P.2d at 447. Here, we should recognize that our supreme court, in enacting Rule 806, could not possibly have intended the untenable result reached by the majority and we should construe the rule accordingly.

¶ 56 Underlying the majority's willingness to countenance the impeachment permitted in this case is an unstated dissatisfaction with the trial court's ruling that defendant's 911 call qualified as an excited utterance. I too believe the trial judge was in error on this point. However, the fact is that the trial judge made his ruling and the state did not contest it as a cross-issue on this appeal. We are stuck with it and the proper response is not to create an untenable rule of evidence. Rather, the majority should acknowledge the trial judge's error in permitting felony conviction impeachment of an excited utterance and rule accordingly. Since this was not the approach the majority chose, I respectfully dissent.