NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

FRANKIE TOMMY ACOSTA, *Appellant.*

Nos. 1 CA-CR 16-0097, 1 CA-CR 16-0319
(Consolidated)
FILED 3-28-2017

Appeal from the Superior Court in Maricopa County
Nos. CR2014-125609-001, CR2005-006385-004
The Honorable Jerry Bernstein, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena Glitsos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Maurice Portley joined.[1]

---

**O R O Z C O**, Judge:

¶1　　　　Frankie Tommy Acosta appeals his convictions and sentences for aggravated assault, a class 3 dangerous felony (Count 1); assault, a class 3 misdemeanor and domestic violence offense (Count 2); and misconduct involving weapons, a class 4 felony (Count 3).[2]　Because Acosta has shown no reversible error, we affirm.

## BACKGROUND

¶2　　　　On the morning of May 26, 2014, while shopping at Walmart, Kelly Daley saw Acosta and his girlfriend, A.O.[3], arguing.　Daley was concerned for A.O., because she looked "really, really scared" and "afraid of [Acosta]," so Daley followed them as they left the store.　When Acosta started yelling at A.O. in the parking lot, Daley called 9-1-1.　Then Daley saw Acosta choke A.O.

---

[1]　　The Honorable Patricia A. Orozco and Honorable Maurice Portley, Retired Judges of the Court of Appeals, Division One, have been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]　　Acosta was granted leave to file a delayed notice of appeal on the revocation of his probation previously imposed in CR2005-006385-004 DT. Acosta's opening brief, however, fails to comply with Arizona Rule of Criminal Procedure 31.13(c)(1)(vi), requiring the brief to contain "the contentions of the appellant with respect to the issues presented . . . with citations to the authorities, statutes and parts of the record relied on." Accordingly, Acosta has waived any challenge to the revocation of his probation and resulting sentence, and therefore we decline to address it.

[3]　　We use the victims' initials to protect their identity and privacy. *See State v. Maldonado*, 206 Ariz. 339, 341 n.1, ¶ 2 (App. 2003).

¶3 At the same time, A.S. and his family drove into the Walmart parking lot and saw Acosta grab A.O. by the throat, pick her up, slam her against a car, and shove her into a white sport utility vehicle. In an attempt to assist, A.S. stopped his car in the middle of the aisle and approached the couple. As A.S. took a few steps forward, he told Acosta "hey, homie, you need to stop." Acosta turned around and pointed a gun at A.S.'s head and then his chest. A.S. retreated with his hands in the air, saying "hey man, I've got my kids with me." As A.S. backed away, Acosta charged at him, then turned, walked away, got into the white SUV, and sped off. A.S. took down the license plate of the white SUV. When the police arrived, they interviewed Daley and A.S., and took their written statements. Two Walmart security cameras captured video, but not audio, of the entire encounter from two different angles.

¶4 Acosta was charged with aggravated assault of victim A.S. (Count 1); misdemeanor assault of victim A.O. (Count 2); and misconduct involving weapons (Count 3). Given these charges, a petition to revoke Acosta's probation imposed in CR2005-006385-004 DT was filed. A jury found Acosta guilty of aggravated assault. Based upon that conviction the court found Acosta in automatic violation of his probation for the 2005 conviction. The trial court found Acosta guilty of misdemeanor assault.[4] In a later proceeding, Acosta pled guilty to misconduct involving weapons, which had been severed from the other two counts at the beginning of trial.[5] Acosta was sentenced to 11.5 years' imprisonment for Count 1; 30 days' incarceration for Count 2, with credit for time served; two years' probation for Count 3 to be served upon release on Count 1; and four years' imprisonment for the probation violation to be served consecutive to the sentence in Count 1. Acosta was granted 734 days' credit for time served.

---

[4] Pursuant to the comment of Arizona Rule of Criminal Procedure 18.1 "[a] defendant has a right to a jury trial when charged with . . . an offense which carries a sentence more severe than 6 months in jail[.]" Since Count 2 was amended to a class 3 misdemeanor, Acosta was only facing thirty days in jail, therefore the court considered the evidence presented. The jury was only asked to reach a verdict on Count 1.

[5] *See State v. Burns*, 237 Ariz. 1, 15, ¶ 39 (2015) (holding that unless the parties have stipulated to a defendant's status as a prohibited possessor, a court can conduct a bifurcated trial to adjudicate any charge that requires evidence of a prior felony conviction).

**¶5** Acosta timely appealed his convictions and sentences.[6] Upon leave of court, he filed a delayed appeal from the finding of a probation violation, and the appeals were consolidated. We have jurisdiction pursuant to Article VI, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033.A.1.[7]

## DISCUSSION

**¶6** We review the trial court's determination of admissibility of impeachment evidence for an abuse of discretion. *State v. Sucharew*, 205 Ariz. 16, 23, ¶ 19 (App. 2003). We will reverse the court's determination "only when [it] constitute[s] a clear, prejudicial abuse of discretion." *State v. Ayala*, 178 Ariz. 385, 387 (App. 1994).

### I. Preclusion of Written Witness Statements

**¶7** Acosta contends the trial court abused its discretion in precluding the written statements A.S. and Daley made to police, arguing they were admissible for impeachment as extrinsic evidence under Arizona Rules of Evidence 613 and 806. Specifically, Acosta asserts the court "applied the wrong standard for determining the admissibility of extrinsic evidence of prior inconsistent statements."

**¶8** A.S.'s testimony revealed two statements inconsistent with his written statement, and defense counsel impeached him with both. On direct examination, A.S. testified a third person came out of the white SUV before Acosta pointed the gun at him. A.S. stated this unidentified young male "was trying to warn me, when I first got out of my vehicle, just to leave the situation alone and just get back in my vehicle and go." On cross-examination, defense counsel showed A.S. his written statement, which he reviewed and authenticated. Upon questioning, A.S. admitted that although he testified the third person exited the white SUV *before* Acosta pulled the gun on him, his written statement stated the third person came

---

[6] Since Acosta pled guilty to Count 3, he is precluded from appealing that conviction and sentence on direct appeal. *See* Ariz. Rev. Stat. § 13-4033.B ("In noncapital cases a defendant may not appeal from a judgment or sentence that is entered pursuant to a plea agreement or admission to a violation of probation.").

[7] Absent material revisions after the time the offense was committed, statutes and rules cited refer to the current version unless otherwise indicated.

out *after* Acosta pointed the gun, and the security video confirmed his written account.

¶9         Additionally A.S. testified that Acosta pointed the gun at him once.  He said that initially Acosta pointed the gun at his head, then "[i]t was lowered, appeared to be down towards my chest.  But it could have been just lowered, you know . . . ."  On cross-examination, defense counsel challenged him on his written statement, which indicated Acosta pointed the gun at him twice.  A.S.'s written statement stated Acosta "choked [A.O.] and slammed her against the vehicle [then] pointed a gun to my head [then] chest, he continued to throw her into the vehicle watching both me and her very nervously he then pointed the gun back at me."  When questioned, A.S. admitted the written statement was wrong and confirmed that the security video did not show a second pointing of the gun after Acosta shoved A.O. into the SUV.

¶10         Daley's testimony revealed one statement inconsistent with her written statement, and likewise defense counsel impeached her with it.  On direct examination, Daley testified that she saw Acosta "pull something out, do something, and he was holding his arm out" and "waving it around."  Based upon the crowd's reaction, she stated she believed Acosta pulled out a gun.  On cross-examination, defense counsel showed Daley her written statement, which she reviewed and authenticated.   Upon questioning, Daley admitted that her written statement did not say she saw Acosta's arm movements.  She further admitted she did not see exactly what happened between Acosta and A.S. because she was hiding behind a car.

¶11         After impeaching both A.S. and Daley, Acosta moved to admit the written statements provided to police, but the State objected on the grounds that the statements were part of the police report.  A bench conference followed:

> THE COURT:  You are trying to get it in under what basis, what exception?
>
> MR. CLARK [Acosta's counsel]:  Well, it's a statement of a witness that they wrote in their own handwriting that I asked them each individually on the stand if that statement was accurate and that that is something that they related to the police. Yes. Now we have differing statements and I want to - - in some respects we have statements that are different.

With respect to [A.S.], when he was on the stand he said stuff that was different than what he wrote.

THE COURT: But he said - - and you read from those reports, and he said those were - -

MR. CLARK: I did.

THE COURT: So maybe I'm - - so how is that going to impeach if he said they were accurate and you read from the statements? What purpose are you trying to get it in? Under what basis?

MR. CLARK: Well, I don't want the State to come up here [and] argue his different version of events when in fact when it was fresh in his mind he wrote in his own handwriting what he saw and observed.

THE COURT: I am saying you basically read from it so we already know about that, correct?

MR. CLARK: I did.

. . . .

THE COURT: See, what I'm saying is that before you establish that, and he said it was accurate, so how is it impeaching it? It's a recently fabricated statement. He said basically, yeah, that was what I said or that's what I wrote.

MR. CLARK: Under 806 I can do it by attacking under supporting declarant's credibility.

THE COURT: He's saying that's what he said. It's not impeaching it. Do you understand what I am saying?

MR. CLARK: I know. My only concern is he said something inconsistent on direct.

THE COURT: But you already impeached him and he didn't deny it. Ordinarily I'd say yes, but I'm saying, yes, he said, that's what I wrote.

Upon which, the court denied Acosta's request.

6

¶12        Evidence of A.S. and Daley making prior statements inconsistent with their trial testimony is admissible both for impeachment and substantive evidence as non-hearsay. Ariz. R. Evid. 801(d)(1)(A). And the superior court allowed such evidence to be admitted during cross-examination. The question here, however, is whether the superior court was also required to admit the prior inconsistent written statements in the form of Exhibit 18.

¶13        Contrary to Acosta's assertion, Rule 806 is inapplicable here. Under the Rule,

> [w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes *if the declarant had testified as a witness*. The court may admit evidence of the declarant's inconsistent statement . . . regardless of when it occurred or whether the declarant had an opportunity to explain or deny it.

(Emphasis added.)

¶14        We interpret Rule 806 "to specifically permit impeachment of hearsay statements by *absent declarants*." *State v. Hernandez*, 191 Ariz. 553, 557, ¶ 10 (App. 1998) (emphasis added). Here, both A.S. and Daley testified; thus, Acosta incorrectly attempted to admit their written statements under Rule 806. We find no error.

¶15        Next, Acosta contends the trial court erred in precluding the written statements under Rule 613. Because Acosta failed to move the written statements into evidence under Rule 613 grounds or object to the court's preclusion on that basis, we apply fundamental error review. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Acosta thus carries the burden of showing not only fundamental error, but also that he was prejudiced by it. *Id*. at ¶ 20. Fundamental error is error that goes to the foundation of the case, deprives a defendant of a right essential to his defense, and is of such magnitude that he could not possibly have received a fair trial. *Id*. at ¶ 19.

¶16        Under Rule 613(b), "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Acosta cites to *State v. Woods*, 141 Ariz. 446, 687 P.2d 1201 (1984), for the proposition that extrinsic evidence containing prior inconsistent statements is admissible, even when the witness admits the inconsistency. Acosta

argues the trial court erred as a matter of law because it did not engage in any analysis under *Woods* other than focusing on the fact that A.S. and Daley authenticated their written statements and admitted the inconsistencies. Acosta asserts the court should have assessed whether admitting the writings would have assisted the jury in evaluating the credibility of witnesses. Acosta's reliance on *Woods* is misplaced.

¶17　　　　In *Woods*, the defendant's accomplice testified at trial. 141 Ariz. at 449. The accomplice's testimony was inconsistent in some respects with his previously recorded statements given to a private investigator. *Id.* at 451. The defendant argued the trial court erred in precluding the admission of the taped statements even though the accomplice admitted all the inconsistences when cross-examined. *Id.* The court discussed situations wherein admission of extrinsic evidence of inconsistent statements should be allowed despite the consumption of time; when the inconsistency addressed a key element of whether the defendant was guilty. *Id.* at 451, 453. However, the court held it was not an abuse of discretion in that case to preclude the tape because the key part of the accomplice's testimony was consistent with the recorded statement; the defendant killed the victim and the accomplice had no prior knowledge of defendant's intention to kill. *Id.* at 453. The court held that whether the jury believed either of the accomplice's versions "was collateral to a determination of defendant's guilt or innocence. Under either version defendant was guilty." *Id.* at 451.

¶18　　　　Acosta's main contention is that he pulled the gun on A.S. in self-defense, fearing for his safety because A.S. approached him from behind. And because it was A.S.'s word against Acosta's in this regard, Acotsa argues the written statements should have been admitted to help assess their credibility. The credibility of A.S. and Acosta and the weight to be given to their testimony are questions exclusively for the trier-of-fact. *See State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007).

¶19　　　　Acosta testified that he and A.O. were arguing because he was trying to take her to a drug rehabilitation facility. Acosta grabbed A.O. in the parking lot to get her into the SUV. Acosta testified that when he was putting A.O. in the SUV, he became aware of someone approaching him from behind. He testified he grabbed the gun in A.O.'s purse, turned around, and pointed it at A.S. because he feared for his life and only wanted to scare him away. Acosta admitted he pointed the gun at A.S. twice; his arm "[w]ent up and down." Although he maintains he feared for his life, Acosta admitted that A.S. did not threaten him in any manner, nor did A.S. have any weapons. Acosta admitted that he initially lied to police, telling them the gun he pointed at A.S. was just a pellet gun resembling a Glock,

when in fact it was a real gun. Further, Acosta only admitted that he pointed the gun at A.S. when confronted with the video evidence.

¶20        Two security videos were played for the jury. Although the video quality was grainy and they did not have audio, it was daylight and the incident was unmistakably captured. Acosta appears as he and A.O. exit Walmart. Acosta is in a red shirt and red hat. He grabs A.O. by the throat, drags her to the parked white SUV, and shoves her into the door. Then, A.S. is seen getting out of his dark-colored minivan in the middle of the aisle and walking toward Acosta and A.O., who are near the SUV. A.S. does not run or charge at Acosta, and it does not appear he is yelling or approaching in any aggressive manner. Almost immediately, when A.S. is still several feet away from them, he begins walking backwards and puts his hands up. Acosta is seen charging after A.S., even as A.S. is retreating with his hands in the air. No gun is visible in Acosta's hands. Acosta then turns, walks to the white SUV, gets in, and drives away.

¶21        Overwhelming evidence supports Acosta's convictions. Whether the jury believed A.S.'s written statement (a third person exited the SUV *after* Acosta pointed the gun at him and Acosta pointed the gun at him *twice*) or his trial testimony (a third person exited the SUV *before* Acosta pointed the gun at him, and Acosta pointed the gun at him *once*) is collateral to a determination of Acosta's guilt. Here, under either version, Acosta is guilty of aggravated assault. Likewise, whether the jury believed Daley's written statement (she did not see any of Acosta's arm movements) or her trial testimony (she saw Acosta "pull something out, do something, and he was holding his arm out" and "waving it around.") is inconsequential.

¶22        On this record, the superior court did not abuse its discretion by not admitting the written statements in addition to the verbal testimony of the prior inconsistent statements. Thus, Acosta has shown no error.

**CONCLUSION**

¶23        Because Acosta has shown no reversible error, we affirm his convictions and sentences.