16 P.3d 788

**STATE of Arizona, Appellee,**

v.

**Dennis Wayne CANION, Appellant.**

**No. 1 CA–CR 99–0255.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 21, 2000.

Review Denied April 24, 2001.

Janet A. Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and David J. Maletta, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Eleanor L. Miller, Phoenix, Attorney for Appellant.

## OPINION

GARBARINO, Judge.

¶ 1 Dennis Wayne Canion appeals his convictions and sentences for murder, aggravated assault, misconduct involving weapons, escape, and solicitation to commit murder. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On March 6, 1997, Canion was driving a borrowed vehicle when Officer David Madeya pulled him over for speeding and driving with suspended license plates. He could not produce a driver's license, vehicle registration, or proof of insurance. Officer Madeya noticed a knife sheath in the vehicle and asked Canion to step out and move to the rear of the vehicle. In response to Officer Madeya's question whether he was carrying any weapons, Canion eventually admitted he was carrying a gun and a pocket knife. Officer Madeya removed the gun and placed it on the hood of the patrol car. As Officer Madeya attempted to remove the knife from Canion's pocket, Canion began struggling with the officer. Meanwhile, Canion's passenger, Patricia Coburn, exited the vehicle. Officer Madeya told her to get back into the vehicle and she appeared to begin to comply. Canion broke free and attempted to run back to the vehicle, Officer Madeya grabbed him, and Canion hit him several times. As Officer Madeya struggled to control Canion, Coburn got out of the vehicle again, this time with a handgun.

¶ 3 Canion testified that he saw Coburn with the gun and yelled "don't shoot, don't shoot." Officer Madeya testified that Canion yelled "kill him, kill him," though he admitted that he might have heard Canion yell the word "shoot," rather than "kill." In any event, Officer Madeya shot Coburn and she died. Officers later recovered a revolver, cocked and ready to fire, that was lying next to her on the ground where she fell.

¶ 4 A search of Coburn, Canion, and the vehicle revealed seven guns, a wooden mallet, and four knives. Additionally, at the time of the incident, Canion was in violation of his parole for a previous murder conviction, for failing to report to his parole officer, and for leaving a halfway house without permission.

¶ 5 In separate counts, and in the alternative, Canion was charged with felony murder, based on the underlying felony of escape, and first degree premeditated murder. In both murder counts, Coburn was identified as the victim. Canion was also charged in separate counts with aggravated assault against a peace officer engaged in official duties, a class 2 dangerous felony, or in the alternative, attempted murder in the first degree, a class 2 felony. Officer Madeya was alleged as the victim in both counts. In addition, Canion was charged with misconduct involving weapons, a class 4 felony; escape, a class 4 dangerous felony; and solicitation to commit first degree murder, a class 3 dangerous felony.[1]

¶ 6 The instructions to the jury included instructions on felony murder and premeditated murder. The instructions for premeditated murder included the lesser-included offenses of second degree murder and manslaughter. The trial court rejected defense counsel's request that it instruct the jurors that they could return a verdict on either felony murder or premeditated murder, but not both, and that they could return a verdict on either aggravated assault or attempted murder, but not both. It appears that the instruction the court gave to the jury on aggravated assault was for the class 6 offense of placing a peace officer in fear of imminent injury, rather than the class 2 offense that had been charged. The court

---

1. Canion was also originally charged with one count of possession of marijuana, a class 6 felony, which was severed for trial.

provided the jury with guilty verdict forms for all of the crimes charged, including lesser-included offenses, and "not guilty" forms for each count.

¶ 7 The jury returned guilty verdicts for felony murder and for second degree murder. It also found Canion guilty of aggravated assault, but not guilty of attempted murder. In addition, the jury found Canion guilty of misconduct involving weapons, escape, and solicitation to commit second degree murder.

¶ 8 The trial court concluded that the convictions for felony murder and second degree murder "merged," and it sentenced Canion only for the greater offense. It imposed a life sentence, with parole eligibility after serving 25 years for the felony murder conviction; a presumptive ten and one-half year consecutive sentence for the aggravated assault conviction; and presumptive sentences for the weapons misconduct, escape, and solicitation convictions, each not exceeding ten years, to run concurrently with the aggravated assault sentence. The court credited Canion with 750 days of presentence incarceration on the felony murder conviction. Canion timely appealed.

## DISCUSSION

I. *Consistency of Two Murder Convictions*

¶ 9 Canion first contends that under the United States Supreme Court's decision in *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), premeditated murder and felony murder are one offense. He argues that the felony murder count and the premeditated murder count of the indictment were alternative forms of the same offense, and that the jurors were confused because the trial court refused to instruct them properly. He contends that the instructions should have been consistent with the indictment, which charged the counts in the alternative; that is, the jury could find Canion guilty of either felony murder or premeditated murder, or could find him not guilty of either, but could not find him guilty of both. He contends that the jury's guilty verdict for second degree murder impliedly acquitted him of premeditated murder, and

must also indicate that it found him not guilty of felony murder. Thus, he argues, he was improperly sentenced for felony murder instead of the second degree murder verdict, and the case must be remanded for re-sentencing.

¶ 10 The State argues that Canion has either invited error or waived the argument absent fundamental error because his attorney failed to object when the verdict was read and because, at the sentencing hearing, he agreed to the trial court's "merger" theory and sentencing on felony murder. It appears that defense counsel reluctantly did so because he had no better resolution than the trial court. We therefore decline to find that defense counsel "invited" the error. Moreover, an illegal sentence can be reversed on appeal despite the lack of an objection. *See State v. Whitney*, 151 Ariz. 113, 115, 726 P.2d 210, 212 (App.1985). We find that Canion has not waived his objection that it was error to sentence him for the first degree murder conviction rather than the second degree murder conviction. We find no error.

¶ 11 The Supreme Court in *Schad* did not hold, as Canion argues, that the jury's finding of no premeditation would "negat[e] the mental state required for felony murder, as well." Rather, the Supreme Court explained that, "under Arizona law neither premeditation nor the commission of a felony is formally an independent element of first degree murder; they are treated as mere means of satisfying a *mens rea* element of high culpability." *Id.* at 639, 111 S.Ct. 2491. Moreover, the Arizona Supreme Court previously has held that a verdict of "not guilty" on a charge of first degree premeditated murder is not inconsistent with a guilty verdict on a charge of felony murder. *State v. Smith*, 160 Ariz. 507, 513, 774 P.2d 811, 817 (1989). Even if we accept Canion's argument that the jury's verdict of guilty of second degree murder means that it found him not guilty of first degree premeditated murder, it neither nullifies the felony murder guilty verdict nor implies that the jury actually found him innocent of that offense.

¶ 12 Canion next submits that, because the indictment set forth the felony murder and premeditated murder charges "in the alternative," the jury was required to return a guilty verdict on one or the other, or neither, but not both. He contends that allowing the jury to return guilty verdicts on both offenses unfairly allowed the State two opportunities for a first degree murder conviction. Because the jury found him guilty of second degree murder, he argues, the State is "stuck with" that verdict rather than the felony murder guilty verdict.

¶ 13 Although the indictment in this case may have been imprudently worded, by placing the two theories of first degree murder in alternative counts, rather than stating them as alternative theories under the same count, we do not agree that it requires the result Canion urges. *Cf. State v. Kelly*, 149 Ariz. 115, 116, 716 P.2d 1052, 1053 (App.1986) (explaining why it is proper to charge both premeditated and felony murder alternatively in one count). Essentially, the State charged Canion with one count of premeditated first degree murder and one count of felony murder committed in the course of escape. If properly charged and instructed, a jury would not reach the issue of whether Canion was guilty of second degree murder unless it acquitted him on both theories of first degree murder. Here, the jury found Canion guilty of felony murder. "Extra" verdicts on the lesser-included offenses to the premeditated murder charge do not affect the validity of the unanimous guilty verdict on the felony murder charge. *See United States v. Gaddis*, 424 U.S. 544, 551, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976) (White, J., concurring) (finding that when an improperly instructed jury convicted a defendant of both robbery and possession of proceeds of robbery, "[i]t may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed"). Canion is not entitled to re-sentencing on this basis.

## II. *Jury Confusion and Lack of Unanimity*

¶ 14 The trial court refused Canion's request for an instruction that the jurors could find him guilty of either felony murder (count one) or premeditated murder (count two), or neither, but not both. For count one, the court provided "guilty" and "not guilty" verdict forms. For count two, the court provided the following verdict forms: guilty of premeditated murder, guilty of second degree murder, guilty of manslaughter, and not guilty of count two. Canion argues that the instructions and verdict forms were insufficient and "muddled," and that they misled and confused the jurors. He contends that the "inconsistent" verdicts require reversal and retrial on the murder charges, citing *Milanovich v. United States*, 365 U.S. 551, 554–56, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), and *Gaddis*, 424 U.S. at 549–50, 96 S.Ct. 1023.

¶ 15 We find that the verdicts are not, in fact, inconsistent. The same evidence could support a conviction for either felony murder or second degree murder. Thus, the cases the State cites, such as *State v. Zakhar*, 105 Ariz. 31, 459 P.2d 83 (1969), and *State v. Webb*, 186 Ariz. 560, 925 P.2d 701 (App.1996), are not directly on point. Likewise, this is not a typical "lesser-included offense" situation because there are no lesser-included offenses to felony murder. *State v. Schad*, 163 Ariz. 411, 417, 788 P.2d 1162, 1168 (1989), *aff'd sub nom. Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Thus, cases such as *State v. Engram*, while instructive, are not directly on point. 171 Ariz. 363, 366, 831 P.2d 362, 365 (App.1991) (noting that "every case that we can find ... concludes that the verdict of guilty on the lesser included offense should be vacated, and the verdict on the greater offense should be allowed to stand"). Therefore, we believe Canion to be arguing that it is improper to allow the jury to render guilty verdicts on both felony murder and second degree murder of the same victim, and that such verdicts require a retrial.

¶ 16 First, we note that the verdict forms were sufficient and not likely to confuse the jury. *See State v. Hernandez*, 191 Ariz. 553, 561, 959 P.2d 810, 818 (App.1998) (finding that submission of "guilty" and "not guilty" forms for each lesser-included offense

is permissible under the Arizona Rules of Criminal Procedure, Rule 23.3, but not required), *review denied* (1999). The verdict forms "show[ed] every choice of verdict that the jury could return," *id.* (quoting *State v. Knorr,* 186 Ariz. 300, 303, 921 P.2d 703, 706 (App.1996)), and clearly gave "the jury the choice of finding the defendant 'not guilty' on the charged offense and all of the lesser included offenses." *Id.*

¶ 17 Moreover, even if the members of the jury were confused by the instructions, we find no reversible error. Canion incorrectly argues that *Milanovich* and *Gaddis* are controlling. In *Milanovich,* a defendant was convicted of both stealing from a Naval commissary store and receiving the stolen currency—convictions which could not both stand, even though both were supported by the evidence. 365 U.S. at 552–55, 81 S.Ct. 728. The trial court had failed to instruct the jury that it could convict the defendant of either larceny or receiving, but not both. *Id.* at 553, 81 S.Ct. 728. The Supreme Court reasoned that it was impossible to determine which conviction the jury would have settled upon if it had been properly instructed. *Id.* at 555, 81 S.Ct. 728. Thus, the court set aside the convictions and remanded the matter. *Id.* at 556, 81 S.Ct. 728.

¶ 18 However, Justice White's concurring opinion in *Gaddis* called this result into question. 424 U.S. at 551, 96 S.Ct. 1023. Justice White reasoned that if properly instructed, the jury would first consider the greater offense, and would only consider the lesser offense if it did not unanimously convict on the greater offense. *Id.* Thus, he reasoned, "[i]t may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed." *Id.* Federal appellate courts that have considered the issue since *Gaddis* have applied the reasoning of the *Gaddis* concurrence, finding a new trial unnecessary. *E.g., United States v. Brown,* 996 F.2d 1049, 1055–56 (10th Cir. 1993).

■ ¶ 19 We likewise adopt Justice White's reasoning in *Gaddis.* As explained above, had the jury been properly instructed to consider the first degree murder charge before proceeding to the lesser murder charges, it would have considered both theories of first degree murder before considering the lesser-included offenses in count two. Because the jury, in fact, convicted Canion of felony murder, we are confident that it would have done the same if properly instructed, the only difference being that it would not have then proceeded to consider the lesser-included offenses in count two.[2] Even assuming that the jury was confused by improper instructions, the error does not require a new trial because Canion was sentenced for only one of the offenses.

■■ ¶ 20 It is unfortunate that the trial court used the word "merger." However, the use of this word did not create reversible error. Moving beyond the trial court's use of the term "merger," and by not giving that term the legal effect the dissent believes it must be given, a finding of guilt of felony murder and second degree murder are not inconsistent. Not only did the State prove the necessary elements to secure the conviction for felony murder, but it also proved the necessary elements of second degree murder. Two separate crimes with one ultimate result—the death of another human—were proven by the State, for which the trial court refused, and prudently so, to impose multiple sentences. The trial court's use of the term "merger" in sentencing does not negate the quantum of proof that the State produced to prove all of the necessary elements of both felony murder and second degree murder. Because the better procedure would have been to simply vacate the second degree murder conviction, as opposed to "merging" the two convictions, we vacate Canion's second degree murder conviction.

### III. *Jury Instructions on Alternative Charges*

¶ 21 Canion contends that the legal effect of charging crimes in two alternative counts

2. Additionally, we note that the jury found Canion guilty of the underlying felony alleged in the

felony murder count-escape.

is to require a conviction for one or the other of the crimes, but not both, citing *State v. Smith,* 631 S.W.2d 353 (Mo.Ct.App.1982), and *State v. Berry,* 916 S.W.2d 389 (Mo.Ct.App. 1996). He submits that the trial court was required to instruct the jury that it could convict him of either felony murder or premeditated murder (or one of its lesser-included offenses), or neither, but not both.[3]

¶ 22 "The decision to refuse a jury instruction is within the trial court's discretion, and this court will not reverse it absent a clear abuse of that discretion." *State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). Here, as discussed above, the indictment was imprudently worded to place the two alternative theories of first degree murder in alternative counts, rather than simply charging first degree murder under two alternative theories in the same count. Properly instructed, the jury would have been required to consider both theories of first degree murder before moving on to consider the lesser-included offenses on the premeditated murder count. Thus, the instruction Canion requested would only have compounded the error in the indictment, adding, rather than eliminating, confusion.

¶ 23 We find the Missouri cases cited by Canion distinguishable. In *Smith,* the defendant was charged with attempted murder or, alternatively, "conspiracy with the purpose of promoting and facilitating [a] murder." 631 S.W.2d at 354–55. The jury convicted Smith only of conspiracy to commit murder, and the Missouri Court of Appeals affirmed. *Id.* at 355. In *Berry,* the defendant was charged with forcible rape or, alternatively, first degree sexual assault; and forcible sodomy or, alternatively, "deviate sexual assault." 916 S.W.2d at 395–96. The jury convicted the defendant only of first degree sexual assault and deviate sexual assault, and the Missouri Court of appeals affirmed, finding that the jury instructions were adequate. *Id.* The alternative charges in those cases were not alternative methods of proving the same crime. Rather, they were different degrees of crimes which could have been proven from similar facts. Thus,

in the Missouri cases, the alternative nature of the charges and the instructions to convict on only one charge or the other, but not both, were designed to prevent conviction for two crimes arising from a single factual scenario. Here, by contrast, the "alternative" counts one and two charged only one crime: first degree murder. *See Schad,* 163 Ariz. at 417, 788 P.2d at 1168. An instruction that the jury must find the defendant guilty of one or the other or neither, but not both, was advisable, but unnecessary.

## IV. *Negligent Homicide Instruction*

¶ 24 Canion next argues that the trial court erred by refusing to give his requested instruction on the lesser-included offense of negligent homicide. A defendant is entitled to an instruction "on all grades of homicide that are reasonably supported by the evidence." *State v. Ruelas,* 165 Ariz. 326, 328, 798 P.2d 1335, 1337 (App.1990). However, there are no lesser-included offenses to felony murder. *Schad,* 163 Ariz. at 417, 788 P.2d at 1168. In light of our conclusion that the conviction for felony murder is valid and that the trial court did not err in its sentencing determination, we need not consider this issue.

## V. *The Defendant's Waiver of His Presence During Jury Selection*

¶ 25 Under Rule 19.2 of the Arizona Rules of Criminal Procedure, a defendant has a right to be present at every stage of the trial, "including the impaneling of the jury." The right to be present at critical stages of the proceedings, including jury selection, also is guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *State v. Garcia–Contreras,* 191 Ariz. 144, 147, ¶ 8, 953 P.2d 536, 538 (1998); *State v. Levato,* 186 Ariz. 441, 443, 924 P.2d 445, 447 (1996). Canion contends that the trial court violated his right to be present during the "for cause" challenges to the jury panel by relying on defense counsel's waiver instead of asking

---

**3.** We reject the State's waiver argument. The record shows that the court and the State understood that Canion's attorney requested such an instruction.

him whether he wished to waive his presence.

■ ¶ 26 This Court previously has held that a trial court may rely on counsel's waiver of a defendant's right to be present during peremptory challenges; personal waiver by the defendant is not required. *State v. Collins*, 133 Ariz. 20, 23, 648 P.2d 135, 138 (App.1982). "Unless the circumstances are exceptional, a defendant is bound by his counsel's waiver of his constitutional rights," even without a showing that the attorney consulted with the defendant. *Id.* (citing *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)). We see no reason to apply a different rule to "for cause" challenges.

¶ 27 Canion submits that the Arizona Supreme Court's decision in *Garcia–Contreras* requires a different result. However, the issue in that case was not whether the right to be present during jury selection could be waived by counsel, but whether the trial court permissibly required the defendant, who was in custody and wearing prison attire, to choose between his right to be present for jury selection and his right to appear before the jury in civilian clothing. *Id.* at 145, ¶ 3, 953 P.2d at 537. The supreme court noted that this forced waiver of one constitutional right or another could have been avoided by granting a short continuance to await the arrival of the defendant's civilian clothing. *Id.* at 146, ¶ 7, 953 P.2d at 538. The supreme court held that, "without meaningful alternatives, [the defendant's] decision not to attend jury selection must be considered involuntary." *Id.* at 147, ¶ 11, 953 P.2d at 539. Here, by contrast, there is no evidence, or even any allegation, of any coercion that caused Canion to involuntarily waive his right to be present.

¶ 28 In this case, the transcript shows that the trial court specifically asked the defense attorney whether Canion chose to be absent during the "for cause" challenges:

> THE COURT: Let the record show that Mr. Canion is not present. I take it ... that's by his choice?
>
> [DEFENSE COUNSEL]: Yeah, he waives his presence.

Absent "exceptional" circumstances, which Canion has not alleged, Canion is bound by his counsel's waiver. The trial court did not err by relying on defense counsel's statement that Canion "waive[d] his presence."

## VI. *Aggravated Assault Conviction and Sentence*

¶ 29 Canion contends that the State indicted him for a class 3 aggravated assault, but that the trial court instructed the jury on a class 6 aggravated assault. Then, the trial court compounded the error by providing a verdict form for a class 3 offense, and sentencing him for a class 3 offense. Thus, Canion contends, the jury found him guilty of a crime for which it had no instructions, and the trial court sentenced him for a crime for which he was not properly convicted. The State, by contrast, contends Canion was indicted for a class 2 felony aggravated assault, but convicted and sentenced for a class 6 felony aggravated assault.

¶ 30 Our review of the record reveals the following: The indictment cited Arizona Revised Statutes Annotated (A.R.S.) sections 13–1204(A)(2), (B) and –1203(A)(2). A charge under section 13–1204(A)(2) (Supp. 1999) is a class 3 felony, *see* A.R.S. § 13–1204(B) (Supp.1999), unless committed against a peace officer engaged in official duties, in which case it is a class 2 felony. *See* A.R.S. § 13–1204(C) (Supp.1999). A charge under section 13–1203(A)(2) (1989) is a class 2 misdemeanor. *See* A.R.S. § 13–1203(B) (1989). The elements alleged in the indictment track those of section 13–1204(A)(2), and include the allegation that the crime was committed against a peace officer. Thus, as charged, the crime was a class 2 felony. The indictment charged that Canion committed the aggravated assault either "alone or with another," thus alleging a theory of accomplice liability. *See, e.g., State v. Baldenegro*, 188 Ariz. 10, 13, 932 P.2d 275, 278 (App.1996) (upholding accomplice liability theory for aggravated assault).

¶ 31 The trial court instructed the jury as follows:

> The crime of aggravated assault requires proof of the following two things:

1. The defendant intentionally put another person in reasonable apprehension of immediate physical injury; and

2. The defendant knew or had reason to know that the person in question was a peace officer[.]

This instruction set forth the elements of section 13–1204(A)(5) (Supp.1999), the class 6 felony, *see* A.R.S. § 13–1204(B), rather than section 13–1204(A)(2), the class 2 felony, because the instruction did not require a finding that defendant used a deadly weapon or dangerous instrument.

¶ 32 Later, the trial court instructed the jury:

> If you find the defendant guilty of ... aggravated assault, ... you must determine whether the offense ... was ... a dangerous offense.... An offense is a dangerous offense if it involves the use or exhibition of a weapon.
>
> The term deadly weapon means anything designed for lethal use, including a firearm.

Additionally, the trial court instructed the jury on accomplice liability as follows:

> A person is criminally accountantable [sic] for the conduct of another if such person is an accomplice of the other person in the commission of an offense.
>
> An accomplice is a person who, with the intent to promote or facilitate the commission of an offense, aids, counsels, agrees to aid or attempts to aid another person in committing the offense.

¶ 33 The verdict form for the aggravated assault count does not set forth any of the elements of the offense, nor does it indicate what class of felony is alleged. It merely states: "We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oaths, do find the Defendant, Dennis Wayne Canion, Guilty of Count 3: Aggravated Assault." It also provides spaces for the jury to check whether it found the offense to be dangerous or nondangerous. The space for "Dangerous" is checked.

¶ 34 Finally, the trial court sentenced Canion for aggravated assault, a class 2 dangerous felony, and imposed a consecutive sentence of 10.5 years.[4] This is the presumptive sentence for a first conviction of a class 2 felony involving the use or threatening exhibition of a deadly weapon or the intentional or knowing infliction of serious physical injury. A.R.S. § 13–604(I) (Supp.1999).

¶ 35 Thus, Canion was indicted and sentenced for a class 2 dangerous aggravated assault. We therefore interpret his argument to be that the jury was not properly instructed on the elements of the class 2 felony, and therefore his conviction and sentence for that crime must be reversed. Canion also states that "there was ... evidence supporting" the class 6 felony instruction actually given, but no verdict form for it. As noted, the verdict form did not specify the class of felony that applied. We therefore interpret this argument to be that it is impossible to determine from the verdict form which offense or class of felony the jury actually believed occurred.

¶ 36 The State contends the error is harmless because Canion was sentenced for a class 6 felony, the same crime for which the jury was instructed. As discussed above, this is incorrect because the record shows that Canion was sentenced for a class 2 felony.

¶ 37 When we compare the statutory elements with the jury instruction given, we find one element of the class 2 felony missing: the requirement that the jury find that Canion (or an accomplice) "use[d] a deadly weapon or dangerous instrument" during the offense. A.R.S. § 13–1204(A)(2). In other words, placing a peace officer in reasonable apprehension of imminent physical injury is a class 6 felony, *see* A.R.S. § 13–1204(A)(5), (B), but using a deadly weapon to place a peace officer in reasonable apprehension of imminent physical injury is a class 2 felony. *See* A.R.S. § 13–1204(A)(2), (B), (C). The

---

4. The State cites the sentencing minute entry for the proposition that the trial court actually sentenced Canion on the class 6 felony. The minute entry lists the aggravated assault as a class 6 felony, but also states that the sentence is 10.5 years, presumptive. Based on the sentencing transcript and on the statutory sentencing scheme, it is obvious that the minute entry's notation of the offense as a "class 6" felony is erroneous.

**236**

aggravated assault instruction, as given, omitted the element "use of a deadly weapon during the offense."

¶ 38 The jury specifically and unanimously found that the crime was "dangerous." This finding required the jury to conclude that, during commission of the offense, Canion (or an accomplice) *used or exhibited a deadly weapon*, defined as "anything designed for lethal use, including a firearm." The jury's unanimous finding that Canion used a deadly weapon during the offense would provide the missing element for the class 2 felony. We believe that, in the context of an aggravated assault charge, the jury's finding that Canion (or an accomplice) "exhibited" a deadly weapon also satisfied that element. The offense, if properly instructed, would have required proof that Canion "use[d] a deadly weapon or dangerous instrument," to "intentionally plac[e] another person in reasonable apprehension of immediate physical injury." A.R.S. §§ 13–1203(A)(2), –1204(A)(2). Exhibiting a deadly weapon is equivalent to its "use" in this context, so long as the other person actually and reasonably feared immediate physical injury—an element Canion concedes existed.

¶ 39 We therefore conclude that the instructions given, though far from ideal, nevertheless were adequate because they required the jury to decide all of the elements necessary for the class 2 felony with which Canion was charged. Moreover, the jury unanimously found all of the elements necessary to support Canion's conviction and sentence for the class 2 felony. *See Gaddis,* 424 U.S. at 551, 96 S.Ct. 1023. Therefore, we affirm Canion's conviction and sentence for the class 2 felony of aggravated assault.

VII. *Prosecutorial Misconduct*

¶ 40 Finally, Canion contends that the prosecutor engaged in misconduct during his cross-examination of Canion. He contends that the misconduct requires reversal because it denied him a fair trial. Despite this assertion, the record reveals that defense counsel failed to object to any of the statements now challenged.

¶ 41 A failure to object during trial constitutes waiver, absent fundamental error. *State v. Valdez,* 160 Ariz. 9, 13–14, 770 P.2d 313, 317–18 (1989). Thus, to prevail on his claim of prosecutorial misconduct, Canion must demonstrate that the prosecutor's action "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). To reverse on the basis of prosecutorial misconduct, the conduct must be so egregious as to permeate the entire atmosphere of the trial. *See State v. Atwood,* 171 Ariz. 576, 611, 832 P.2d 593, 628 (1992); *see also State v. Murray,* 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995) (finding the question to be "whether the prosecutor's actions were reasonably likely to have affected the jury's verdict, thereby denying him a fair trial"). When misconduct results in the defendant being denied a fair trial, we will reverse even absent an objection at the time of the misconduct. *State v. Duzan,* 176 Ariz. 463, 467, 862 P.2d 223, 227 (App.1993).

¶ 42 Canion contends that the prosecutor asked him a number of questions during cross-examination in which he highlighted the differences between Canion's testimony and Officer Madeya's testimony, and that the prosecutor asked Canion to comment on the officer's credibility. Canion argues that these questions were improper, citing *State v. Reimer,* 189 Ariz. 239, 241, 941 P.2d 912, 914 (App.1997) (holding that it is improper to ask a witness to comment on the credibility of another witness), and *United States v. Sanchez,* 176 F.3d 1214, 1219–20 (9th Cir. 1999) (finding it improper for a prosecutor to ask a defendant whether a Deputy Marshall lied when he testified). He contends the questions permeated the trial and deprived him of a fair trial because the outcome of the case depended entirely on which version of events the jury believed—Canion's, or Officer Madeya's.

¶ 43 Canion does not contend that other evidence at the trial was presented unfairly, nor does he contend that the prosecutor presented improper information to the jury by his questions. The questions elicited only information that the jury previously had

heard when Officer Madeya testified, and highlighted inconsistencies between Canion's and Officer Madeya's testimony—inconsistencies which a prosecutor would be allowed to argue to the jury. The jury could not have been surprised to hear that Canion believed the officer was mistaken in his recollection of the events, given Canion's own conflicting testimony, nor do we think that Canion's acknowledgment of the discrepancies was likely to affect the jury's overall assessment of either witness's credibility. *Cf. State v. Morales,* 198 Ariz. 372, 10 P.3d 630 (App.2000). The trial court instructed the jurors not to give greater credibility to the police officer's testimony merely because he was a police officer, but to rely on other indicia of credibility and reliability, such as ability and opportunity to observe, memory while testifying, motive, prejudice, and any inconsistent statements. It is presumed that jurors have followed the trial court's instructions. *State v. LeBlanc,* 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).

¶ 44 Even if we assume the prosecutor's questions constituted misconduct, we do not find that the misconduct was so pervasive or so pronounced that the defendant's trial lacked fundamental fairness.

## CONCLUSION

¶ 45 For the foregoing reasons, we affirm Canion's conviction for felony murder and aggravated assault and vacate Canion's second degree murder conviction.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge.

EHRLICH, Judge, dissenting.

¶ 46 I dissent from the majority's opinion. There is no doubt in my mind that Canion should be granted a new trial. This is a record replete with errors that "cast doubt on the integrity of the verdict." *State v. King,* 158 Ariz. 419, 424 n. 4, 763 P.2d 239, 244 n. 4 (1988).

¶ 47 Only two errors need be discussed: The trial court erred by allowing the jury to return verdicts of guilt of both first-degree (felony) murder and second-degree murder as a lesser-included offense of first-degree

(premeditated) murder because it concluded that the two convictions would "merge" upon sentencing. The trial court also erred by instructing the jury on aggravated assault as a class 6 felony, although Canion was indicted for aggravated assault as a class 2 felony, the jury was given a verdict form only with regard to a class 2 felony, and Canion was given a consecutive sentence for the commission of a class 2 felony.

### A.  First–Degree Murder

¶ 48 Canion was indicted for a single first-degree murder in alternative counts: Count I, felony murder, and Count II, premeditated murder. Despite Canion's objections, the jury was not instructed that these were alternate forms of first-degree murder. Rather, its instructions included those for both felony murder and premeditated murder, and the instructions for premeditated murder included instructions for, inter alia, the lesser-included offense of second-degree murder. With these instructions, the jury found Canion guilty of first-degree (felony) murder (Count I) and of second-degree murder (Count II). Clearly the trial court erred in permitting the case to be sent to the jury in such a way as to permit convictions of two degrees of homicide for the one murder with which Canion was charged. Clearly the convictions for felony murder and second-degree murder do not merge as "double punishment" in sentencing. Clearly this is not an error that can be remedied absent a new trial.

¶ 49 The felony-murder doctrine is an anomaly in the law of homicide because the government is not required to prove that the defendant had the mens rea for murder but only that for the attendant felony. In early common law, murder was simply defined as the unlawful killing of another human being with "malice aforethought;" the intent to kill and the intent to commit a felony were alternative aspects of a single concept of malevolence. *Schad v. Arizona,* 501 U.S. 624, 640–41, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Thus, a person who caused a death while perpetrating a felony was guilty of murder; intent was imputed regardless of the actual intent of the offender, the dangerousness of

the felony or the likelihood that death might result. *See* W. Lafave & A. Scott, CRIMINAL LAW 545–46 (1972). The rationale was that, because the defendant committed a felony, he was a "bad person" such that society need not concern itself with the fact that the result accomplished may have been very different from the result intended. *Id.* at 560. With the evolution of the criminal law, however, it came to be espoused that a person is *not criminally liable without the requisite culpable mental state* with regard to the result of his action. *Id.* Accordingly, some United States legislatures and appellate courts have imposed differing requirements from the original common-law doctrine, such as requiring the defendant to have a degree of culpable mental state beyond the intent to commit the underlying felony. *See, e.g.,* ARK.CODE ANN. § 41.1501(1)(a) (1977)(defendant must manifest "extreme indifference to the value of human life" in causing the death); DEL.CODE ANN. tit. 11, § 636(a)(6)(Supp.1982)(requiring "criminal negligence"); LA.REV.STAT. ANN. 14:30 (West Supp.1983)(requiring "specific intent to kill or to inflict great bodily harm"); *State v. Doucette,* 143 Vt. 573, 470 A.2d 676, 682 (1983)(malice as essential element of felony murder); *People v. Aaron,* 409 Mich. 672, 299 N.W.2d 304, 326–27 (1980)(malice not found from intent to commit underlying felony alone); *State v. Galloway,* 275 N.W.2d 736, 738 (Iowa 1979)(felony murder includes element of malice), overruled on other grounds, *State v. Schutz,* 579 N.W.2d 317 (Iowa 1998); *State v. Harrison,* 90 N.M. 439, 564 P.2d 1321, 1324 (1977)(presumption that one who commits any felony has requisite mens rea to commit first-degree murder insupportable legal fiction; killing must be natural and probable consequence of felony), *superceded by statute on other grounds, Tafoya v. Baca,* 103 N.M. 56, 702 P.2d 1001 (1985); *State v. Millette,* 112 N.H. 458, 299 A.2d 150, 153 (1972)(malice indispensable aspect of murder and not inference of law

from mere act of killing during commission of felony); *State v. Noren,* 125 Wis.2d 204, 371 N.W.2d 381, 384 (App.1985)(construing "natural and probable consequence" language of felony-murder statute to limit liability to deaths that were foreseeable consequences of felonious acts equal to "depraved mind" murder); *see also* MODEL PENAL CODE § 210.2 (requiring recklessness under circumstances "manifesting an extreme indifference to the value of human life").

¶ 50 Arizona's statutory scheme remains, though, that there are two means of committing first-degree murder, with premeditation or in the course of a designated felony;[5] they carry alternative mental states, one being premeditation and the other being the "intent required for murder combined with the commission of an independently culpable felony." *Schad,* 501 U.S. at 631–32, 111 S.Ct. 2491, citing *State v. Serna,* 69 Ariz. 181, 188, 211 P.2d 455 (1949)("The attempt to perpetrate [any felony] named in the statute, during which a homicide is committed, takes the place of and amounts to the legal equivalent of such deliberation, premeditation, and design, which were otherwise necessary attributes of murder in the first degree." (Citation omitted.)).

¶ 51 These being alternative mental states, however, and this is the point significant for the resolution of Canion's case, first-degree murder remains one offense, not two. *Id.* at 637–45, 211 P.2d 455. That is why the single homicide was charged in this case in the alternative; Canion was not charged with two murders but with alternative methods of committing a single first-degree murder. *See State v. Kelly,* 149 Ariz. 115, 116, 716 P.2d 1052, 1053 (App.1986)(first-degree murder charged alternatively in one count).

¶ 52 The majority basically is equating felony murder with second-degree murder as if the crimes were a similar expression of an "extreme indifference to human life" or the

---

**5.** Arizona Revised Statutes ("A.R.S.") section 13–1105 (1997) provides in pertinent part:

A. A person commits first degree murder if:
1. Intending or knowing that the person's conduct will cause death, such person causes the death of another with premeditation.

**2.** Acting either alone or with one or more other persons such person commits or attempts to commit [designated felonies] and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person.

"reckless engagement in conduct creating a grave risk of death." [6] On this rationale, they are able to uphold a merger of the second-degree murder conviction with the first-degree murder conviction. While in many states, as above noted, the crime of murder committed in the course of the commission of a felony requires a mental state which equates with second-degree murder, under Arizona law, there is no such analysis as that in which the majority engages. According to our statutes, these two forms of homicide are neither one and the same, nor is one a lesser-included offense of another. Not only do the two crimes require differing mental states, which alone negates the lesser-included analysis, no lesser-included homicide offense exists for first-degree (felony) murder. *See State v. Lopez,* 163 Ariz. 108, 112, 786 P.2d 959, 963 (1990); *State v. Celaya,* 135 Ariz. 248, 255, 660 P.2d 849, 856 (1983), citing *State v. Arias,* 131 Ariz. 441, 641 P.2d 1285 (1982). Thus there can be no such "merger."

¶ 53 The instructions and the verdicts at the very least signal jury confusion.[7] And it is not an appropriate cure to substitute appellate judgment for that of the jury, most particularly when, in a case as factually complex as this, the jury could have decided that Canion was guilty of either form of first-degree murder, of neither form of first-degree murder but a lesser-included offense, e.g., second-degree murder, or of no such resolution of the homicide charge.

¶ 54 To put this case in its most simple form, there is but one defendant on trial for the death of one person. The jury, however, was permitted to return homicide convictions on both of two alternative theories, which is legally impossible. Without doubt, this error casts doubt on the integrity of the verdict and should be held to be reversible.[8]

*B. Aggravated Assault*

¶ 55 The trial court further erred by instructing the jury on aggravated assault as a class 6 felony, although Canion was indicted for aggravated assault as a class 2 felony, the guilty verdict form was for a class 2 felony, and Canion was given a consecutive sentence for that crime as a class 2 felony. This error led to a jury finding Canion guilty of an offense upon which it was never instructed.

¶ 56 It is the duty of the trial court to "instruct the jury upon the law relating to the facts of the case and upon matters vital to a proper consideration of evidence." *State v. Evans,* 109 Ariz. 491, 493, 512 P.2d 1225, 1227 (1973). Indeed, in such matters the court is required to instruct the jury on its own motion even if not requested by the defense: "If the trial court fails to instruct the jury on a matter vital to the rights of the defendant, such an omission creates fundamental error." *Id.*

¶ 57 As all acknowledge, the trial court varied its instruction from the elements set out in the indictment; it omitted the element "use of a deadly weapon during the offense." However, admittedly, in returning its verdict, the jury specifically found that the crime was "dangerous," which, as indicated, meant that Canion used a deadly weapon during the offense. Nonetheless, a fact must be found via jury instructions which correctly identify the elements of the offense according to the proper standards. It is rudimentary that the jury be instructed regarding the elements of the crime with which the defendant is charged. The jury may not, as in this case,

---

6. The second-degree murder statute, A.R.S. § 13–1104(A)(1997), provides that a person commits second-degree murder if, acting without premeditation and
   3. Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person.

7. Indeed, during deliberations, the jury sent a note asking the following question:
   Is it necessary to eliminate the most serious charge before we move to a lesser charge:
   Specifically, first degree premeditated to second degree murder to manslaughter. Should we consider all of count 2 at the same time?

8. To quote from *State v. Smith,* 631 S.W.2d 353, 356 (Mo.App.1982):
   The crimes were charged in the alternative. In such cases, the effect of the allegations is that the defendant committed either one or the other of the offenses; therefore, the jury may find the defendant not guilty of both charges, or guilty of one charge, but not guilty of both.

cobble together bits of evidence and reach its verdict of guilt of an offense about which it was not instructed. Thus, when the jury has erroneous or incomplete instructions regarding the law, reversal must be required.

¶ 58 These verdicts were the result of trial court errors that must be deemed reversible and, accordingly, Canion should be granted a new trial.