NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

STEVEN FREDERICK SKINNER, *Appellant*.

No. 1 CA-CR 11-0585
FILED 11-04-2014

Appeal from the Superior Court in Yavapai County
P1300CR200901310
The Honorable Tina R. Ainley, Judge

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART AND
VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Matthew H. Binford
*Counsel for Appellee*

C. Kenneth Ray II, Esq., Prescott
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Michael J. Brown and Judge Diane M. Johnsen joined.

**T H U M M A**, Judge:

**¶1**　　　Appellant Steven Frederick Skinner appeals from his convictions and resulting sentences for nine counts of sexual conduct with a minor over age 15. Skinner argues the superior court committed reversible error in: (1) precluding evidence that the victim was residing with an investigating police officer and his daughter at the time of trial; (2) permitting two police officers to testify that they did not believe Skinner was being truthful with them during their investigation and (3) placing Skinner on lifetime probation for two of the convictions. Affirming the convictions, this court vacates the second probation grant, because lifetime probation was not an available consequence for the second of the two felony convictions at the time of that offense.[1]

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**　　　In June 2008, the victim began living with Skinner and his wife. On nine occasions from July 2008 through March 2009, Skinner engaged in sexual conduct with the victim, a minor over age 15.

---

[1] The Memorandum Decision issued September 4, 2014, remanded for resentencing on this count. After that Memorandum Decision but before the mandate issued, the court received notice that Skinner died on September 15, 2014. In a separate order, the court addresses various filings after his death and dismisses this appeal. Given Skinner's death, however, it is impossible for him to be resentenced on remand. Accordingly, this Memorandum Decision replaces the original Memorandum Decision (now withdrawn) to omit any reference to remanding or resentencing.

[2] On appeal, this court views the evidence in the light most favorable to sustaining the convictions and resolves all reasonable inferences against the defendant. *State v. Karr*, 221 Ariz. 319, 320 ¶ 2, 212 P.3d 11, 12 (App. 2008).

¶3          In March 2009, the victim went to California to live with her Mother. In October 2009, the victim first revealed Skinner's sexual conduct with her by telling her Mother, and the police were notified. During a recorded confrontation call, Skinner discussed his sexual conduct with the victim. After additional investigation, as relevant here, Skinner was charged with nine counts of sexual conduct with a minor over age 15 in violation of Arizona Revised Statutes (A.R.S.) section 13-1405 (2014), each a class 6 felony.[3] The State moved in limine to preclude any evidence that, at the time of trial, the victim was living in California with California law enforcement Detective Wallace (who had set up the confrontation call and contacted Arizona law enforcement based on the victim's initial report) and his daughter. After hearing oral argument, the superior court allowed evidence that the victim was living out of state but precluded evidence that she was living with Detective Wallace and his daughter, unless Detective Wallace testified at trial.

¶4          At a six-day jury trial, the victim, Officer Boelts, Detective Johnson and others testified, but Detective Wallace did not testify. After deliberations, the jury found Skinner guilty on nine counts of sexual conduct with a minor over age 15. Skinner was sentenced to presumptive, concurrent prison terms of 1.75 years on seven of the convictions and was given proper presentence incarceration credit. For the two other convictions (with offense dates in 2008), Skinner was placed on lifetime probation. From Skinner's timely appeal, stayed for an extended period of time pending resolution by the superior court of a related post-conviction relief petition, this court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.     The Superior Court Did Not Err In Precluding Evidence That The Victim Was Living With Officer Wallace And His Daughter At The Time of Trial.

¶5          The superior court "has considerable discretion in determining the relevance and admissibility of evidence," and this court

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. The jury found Skinner not guilty of a tenth sexual conduct with a minor charge and two counts of sexual assault. Pre-trial, two kidnapping counts were dismissed without prejudice.

will not reverse a ruling on a motion in limine absent an abuse of that discretion. *State v. Amaya-Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990).

¶6          Skinner argues evidence of the victim's living situation at the time of trial was relevant to establish that her "accusations presented . . . to Det. Wallace were fabricated and/or maintained upon improper motives." Detective Wallace, however, did not testify at trial and, accordingly, did not testify about the victim's allegations disclosed to him. Moreover, the victim did not begin to live with Detective Wallace and his daughter until after the victim first disclosed the offenses to her Mother. Indeed, it appears that the victim first met Detective Wallace in November or December 2009 in connection with a confrontation call. Thus, the fact that the victim was residing with Detective Wallace and his daughter during the trial held in July and August 2010 was not relevant to whether the victim had fabricated the allegations against Skinner nearly a year earlier. Nor has Skinner shown how evidence of the victim's living situation at the time of trial would have demonstrated that her allegations against Skinner were "maintained upon improper motives." In short, Skinner has not shown that the superior court abused its discretion in finding evidence "as to whom [the victim] may be residing with is not relevant to the case." *See also* Ariz. R. Evid. 402 (noting irrelevant evidence is not admissible).

¶7          Even relevant evidence "may be excluded if its utility on a legitimate basis is slight compared to the danger it poses of either illegitimate use or waste of judicial time." *State ex rel. Hamilton v. City Court of Mesa*, 165 Ariz. 514, 518, 799 P.2d 855, 859 (1990) (citation omitted); *see also* Ariz. R. Evid. 403. Although the superior court did not expressly conclude that a danger of confusion of the issues would have substantially outweighed any probative value of evidence of the victim's living situation, thereby justifying preclusion of the evidence, the court would not have abused its discretion in so concluding. *See State v. Dann*, 205 Ariz. 557, 569 ¶ 35, 74 P.3d 231, 243 (2003). Finally, Skinner was not prohibited from challenging the victim's credibility at trial through cross-examination and otherwise; the superior court's ruling only prohibited him from eliciting testimony that the victim was living with Detective Wallace and his daughter at the time of trial. For these reasons, Skinner has shown no reversible error in the superior court's ruling. *See* Ariz. R. Evid. 103(a).[4]

---

[4] As Skinner correctly notes, this court is limited to the record presented to the superior court, notwithstanding the fact that, after trial, it was learned that the victim and Detective Wallace had what Skinner describes as an "illicit relationship."

**II.    The Superior Court Did Not Commit Fundamental, Prejudicial Error By Allowing Two Police Officers To Testify That They Did Not Believe Skinner Was Being Truthful With Them During Their Investigation.**

¶8    Officer Boelts and Detective Johnson testified in the State's case-in-chief. Officer Boelts interviewed Skinner on December 17, 2009 and, at trial, the State played portions of that recorded interview for the jury. The prosecutor would play an unspecified portion of the interview, then stop the recording and ask Officer Boelts questions, and then repeat that sequence. After stopping the recording at one point during Officer Boelts' direct examination, the following colloquy took place:

> [PROSECUTOR:] I just want to be clear. Because you asked him about this stopping off. And I want to get the town right. Is it Rock Springs?
>
> [OFFICER BOELTS]: Yes. It is Rock Springs.
>
> Q. He never said where they went to eat, did he?
>
> A. He didn't tell me. No.
>
> Q. And he didn't say well, we had this to eat or that to eat, did he?
>
> A. No, he didn't.
>
> Q. And you didn't feel he was being truthful with you, did you?
>
> A. I did not.
>
> Q. And why is that?
>
> A. He—when I asked him to tell me about his experience--
>
> [DEFENSE ATTORNEY:] Judge, I'm going to object on speculation and purview of the jury as to his opinion as to defendant's guilt.
>
> THE COURT: Just a moment. [The question was then read by the court reporter]. . . The objection is overruled as to that question.

THE WITNESS: As to that question I did not feel he was being truthful with me.

Q. Is that because he kept on changing his story?

A. That was in large part. Partly because he was contradicting some of the things he said on the confrontation call. But primarily as this progressed because he kept changing his story.

**¶9**  Detective Johnson separately interviewed Skinner on December 17, 2009 while driving in his car and, at trial, the State played portions of that recorded interview for the jury. The prosecutor would play a portion of that interview, then stop the recording and ask Detective Johnson questions, and then repeat that sequence. After stopping the recording at one point during Detective Johnson's direct examination, the following colloquy took place:

[PROSECUTOR:] Okay. If you can explain Detective, what your line of questioning – what was it all about.

A. When we question suspects, particularly in cases involving sex, we're attempting to create an environment that facilitates a truthful statement. While doing that – and I've conducted many suspect interviews on cases involving sex and minors and other things.

I will frequently vilify the victim, make the victim sound like the victim is at fault. I will try and appear very sympathetic to somebody who is doing the kinds of things I'm questioning about. I'll use profanity. I do lots of things like that.

Q. So when you're referring to [the victim in the interview] as a 16-year-old little ____, was that your personal opinion?

A. No. Again, trying to vilify the victim to create an environment to facilitate a truthful statement.

6

Q. And in that exchange when you're talking about the relationship, does the defendant ever deny a relationship?

A. When I'm ending there, I continue saying it's obvious there's sex. It's obvious there's sex. You're talking about doing it. You're talking about this. You're talking about that. She's talking about child molestation. He says, I believe at one point there are things that are being misconstrued, kind of weakly. When I get to the specifics about the incident on the way to the Laker game, then there is a strong denial about the incident. But before that, there is no strong denial to all these individual mentions of it's obvious you guys were having sex.

Q. And did the defendant—when you were talking about this trip down to see the Laker's game and having this meal, did he ever tell you where they had this meal?

A. He didn't tell me where they had the meal. In fact, I asked for details. It's something you bring up in a phone conversation. What was this about? And rather than gave me details about that, he jumps to a past incident when [the victim] was a little girl and McDonald's. And there is no McDonald's in Black Canyon City. So instead of talking about this incident that's so memorable, I heard him bring it up in a phone call he talks about some past incident when she was a little girl in McDonald's.

Q. And why is that important to you based upon your training and experience?

A. In my experience dealing with people who are deceptive, they will frequently try to change the subject because it's hard for them to quickly recall. Not quickly recall, but quickly make up a story. They'll just try to misdirect. I've dealt with that many times.

The questioning then turned to a prior exchange with Skinner in the interview. Skinner argues this testimony was an improper "opinion as to the truthfulness of a non-testifying witness' statement" (Skinner's statements) mandating reversal.

**¶10** Skinner did not object to Detective Johnson's testimony. Skinner's objection to Officer Boelts' testimony came after he testified, without objection, that he did not believe that Skinner was being truthful with him. Although Skinner objected to a subsequent question, that question was never answered, and Skinner did not object when Officer Boelts was asked whether he had that belief because Skinner "kept on changing his story." Given his failure to make a timely objection, this court reviews Skinner's challenge for fundamental error. Ariz. R. Evid. 103(a)(1) & (d).

**¶11** To prevail under fundamental error review, Skinner "must establish both that fundamental error exists and that the error in his case caused him prejudice.**" *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005). Fundamental error is reserved for "'those rare cases that involve "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial."'" *State v. Valverde*, 220 Ariz. 582, 585 ¶12, 208 P.3d 233, 236 (2009) (citations omitted).

**¶12** "Arizona prohibits lay and expert testimony concerning the veracity of a statement by another witness. Determining veracity and credibility lies within the province of the jury." *State v. Boggs*, 218 Ariz. 325, 335 ¶ 39, 185 P.3d 111, 121 (2008) (citing cases). The State claims this general prohibition does not apply here, because Skinner did not testify as a trial witness. The State, however, offers no authority supporting this argument. Had a timely objection to the relevant questions been made, the superior court properly could have sustained those objections. Because that did not occur, the question becomes whether Skinner has shown impermissible resulting prejudice from any error in admitting this testimony. *See Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

**¶13** Skinner argues that the testimony of Officer Boelts and Detective Johnson was "nothing more than advice to jurors on how to decide the case." *Boggs*, 218 Ariz. at 335 ¶ 39, 185 P.3d at 121. In context, however, the testimony did not address the issue of Skinner's guilt. Instead, the testimony addressed an impression (that Skinner said inconsistent things) and a comparatively small detail (that Skinner did not tell the officers where he and the victim went to eat or what they had to eat), why

the officers thought this was significant and why their investigation continued. Thus, this evidence did not impermissibly tell the jurors how to decide the case and was not merely opining on the truthfulness of another witness. *See Boggs*, 218 Ariz. at 335 ¶ 39, 185 P.3d at 121; *State v. Reimer*, 189 Ariz. 239, 240-41, 941 P.2d 912, 913-14 (App. 1997) (citing cases). Instead, and recognizing Skinner did not testify at trial, the police officers were "not speaking as . . . expert[s] on truthfulness. [They were] merely stating [their] reasons for not believing the defendant's story." *State v. Doerr*, 193 Ariz. 56, 63 ¶ 26, 969 P.2d 1168, 1175 (1998) (alternative holding).

**¶14**         Skinner has not met his burden of showing that he was prejudiced by this testimony. "The jury was instructed about its duty to determine the credibility of witnesses, and '[w]e presume that the jurors followed the court's instructions.'" *State v. Martinez*, 230 Ariz. 382, 385 ¶ 14, 284 P.3d 893, 896 (App. 2012) (quoting *State v. Newell*, 212 Ariz. 389, 403 ¶ 68, 132 P.3d 833, 847 (2006)). Moreover, the testimony did not tell the jurors how to decide the case and, having considered the evidence as a whole, Skinner has not demonstrated that any error in admitting this testimony, even if constituting fundamental error, resulted in prejudice. *See Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

**III.         The Superior Court Properly Placed Skinner On Lifetime Probation For The First, But Not The Second, 2008 Conviction For Sexual Conduct With A Minor Over Age 15.**

**¶15**         Along with imposing concurrent prison terms not challenged on appeal, the superior court placed Skinner on lifetime probation for his convictions for (1) sexual conduct with a minor over age 15 committed between July 1 – 31, 2008 and (2) sexual conduct with a minor over age 15 committed between August 1 – 31, 2008. Skinner argues that the superior court erred in placing him on probation for these convictions, that a prison term was the only appropriate consequence for these convictions and, accordingly, that the probation grants should be vacated.

**¶16**         For different reasons and in different ways, both the State and Skinner argue the other waived various aspects of this issue. Notwithstanding those arguments, "an illegal sentence can be reversed on appeal despite the lack of an objection." *State v. Canion*, 199 Ariz. 227, 230 ¶10, 16 P.3d 788, 791 (App 2000) (citing *State v. Whitney*, 151 Ariz. 113, 115, 726 P.2d 210, 212 (App. 1985)); *see also State v. Provenzino*, 221 Ariz. 364, 369 ¶ 18, 212 P.3d 56, 61 (App. 2009) ("Imposition of an illegal sentence constitutes fundamental error that may be reversed on appeal, despite the lack of an objection in the trial court.") (citing cases). Accordingly, the court

looks to the applicable law in place at the time of the offenses to determine whether the probation grants were permissible. *See State v. Loney*, 230 Ariz. 542, 546 ¶ 14, 287 P.3d 836, 840 (App. 2012).

**¶17**        A.R.S. § 13-703, which became effective January 1, 2009, does not purport to be retroactive and, accordingly, is not retroactive. *See* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein."). Therefore, the applicable sentencing provision for the offenses resulting in the probation grants is the law that existed in 2008. *See* A.R.S. § 1-246. As applicable here, A.R.S. § 13–702.02(A) (2008) governed sentencing for multiple felony offenses committed in 2008 that were not committed on the same occasion. As relevant here, that statute read:

> A person who is convicted of two or more felony offenses that were not committed on the same occasion but that . . . are consolidated for trial purposes . . . shall be sentenced, for the second or subsequent offense, pursuant to this section.

A.R.S § 13–702.02(A) (2008). The statute then provided possible prison terms for a second felony offense and subsequent felony offenses. A.R.S. § 13-702.02(B)(3), (4) (2008).

**¶18**        As applied, Skinner could be placed on probation for up to the rest of his life for the first felony offense (but not the second felony offense or subsequent felony offenses) for sexual conduct with a minor over age 15 committed in 2008. *See* A.R.S. § 13-902(E) (2008). As applicable to offenses committed in 2008, for the second felony offense and subsequent felony offenses, a prison term was the only legally permissible consequence. Accordingly, although Skinner properly was placed on lifetime probation for his conviction for sexual conduct with a minor over age 15 committed between July 1 – 31, 2008 (the first felony offense), he was not probation eligible and was required to be sentenced to prison for his conviction for sexual conduct with a minor over age 15 committed between August 1 – 31, 2008 (his second felony offense). *Id.* Accordingly, the lifetime probation grant for Skinner's felony conviction for sexual conduct with a minor over age 15 committed between August 1 – 31, 2008 was an illegal sentence and must be vacated.

## CONCLUSION

**¶19** Skinner's convictions and sentences are affirmed except for Skinner's sentence of lifetime probation for felony sexual conduct with a minor over age 15 committed between August 1 - 31, 2008 (listed as Count VII in the Indictment), which is vacated.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh